FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

2013 JAN 10  PM 3:10

|  |  |
|---|---|
| JAMES D. HINSON ELECTRICAL CONTRACTING CO., INC.; BLYTHE DEVELOPMENT COMPANY and CALLAWAY GRADING, INC., individually and on behalf of all others similarly situated; and NATIONAL UTILITY CONTRACTORS ASSOCIATION,<br><br>    Plaintiffs,<br><br>v.<br><br>AT&T SERVICES, INC. and BELLSOUTH TELECOMMUNICATIONS, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CIVIL ACTION NO. 3:13-cv-29-J-34 JRK |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, James D. Hinson Electrical Contracting Co., Inc., Blythe Development Company and Callaway Grading, Inc., individually and on behalf of all others similarly situated, and National Utility Contractors Association, on behalf of itself and its members, bring this action against Defendants AT&T Services, Inc. and BellSouth Telecommunications, LLC, alleging as follows:

## NATURE OF ACTION

1.     This class action is brought to recover overcharges collected by AT&T Services, Inc. and BellSouth Telecommunications, LLC from those who damage underground and above-ground facilities and who receive bills for the costs of repair.

When their facilities are damaged, Defendants are entitled to reimbursement for their actual losses in repairing the damage. However, Defendants mark up their bills with a charge for "claims processing" to which they are not legally entitled. Defendants also charge a fee for "loss of use" to their facilities which is not legally recoverable because no compensable loss of use has occurred, and they routinely charge damagers for items which are not necessary to repair the damage to Defendants' facilities.

2.     Plaintiffs allege Defendants' conduct results in unjust enrichment under the laws of each state in which they do business. Plaintiffs further allege that Defendants' conduct violates the Florida Deceptive and Unfair Trade Practices Act and the North Carolina Unfair and Deceptive Trade Practices Act. Plaintiffs seek to recover overcharges Defendants have wrongfully collected and obtain equitable relief on behalf of a class of damagers in 42 states (the "national class"), a subclass of damagers in the states in which Defendant BellSouth Telecommunications, LLC does business (the "BellSouth subclass"), and state-specific subclasses of damagers in Florida, North Carolina, and Georgia (the "Florida subclass", the "North Carolina subclass" and the "Georgia subclass.")

3.     The national class seeks to recover damages resulting from Defendants' practice of marking up its bills with charges for "claims processing" and for unnecessary items. The BellSouth subclass and the Georgia and North Carolina subclasses seek damages from Defendants' charges for "claims processing," unnecessary items, and "loss of use." The Florida subclass does not challenge the claims processing charge; it seeks injunctive and declaratory relief to stop Defendants from charging for loss of use when no compensable loss of use has occurred and for unnecessary items.

2

## PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff James D. Hinson Electrical Contracting Co., Inc. ("Hinson Electric") is a Florida corporation with its principal place of business located at 11609 Columbia Park Drive West, Jacksonville, Florida 32258.

5.     Plaintiff Blythe Development Company ("Blythe Development") is a corporation organized under the laws of the State of North Carolina having its principal place of business at 1415 East Westinghouse Boulevard, Charlotte, North Carolina 28277.

6.     Plaintiff Callaway Grading, Inc. ("Callaway Grading") is a corporation organized under the laws of the State of Georgia having its principal place of business in Henry County at 505 Steele Drive, Hampton, Georgia 30228.

7.     Plaintiff National Utility Contractors Association ("NUCA") is headquartered in Fairfax, Virginia.  NUCA is a national membership organization representing the interests of more than one thousand utility and excavation contractors around the country, including in Georgia and North Carolina.  Among its organizational activities, NUCA serves as an advocate for its members, conducts safety and educational programs in the field of underground utilities construction, and provides consulting services to its members in the area of damage prevention and claims evaluation. NUCA brings this action for declaratory and injunctive relief on behalf of its members who have been injured by Defendants' wrongful practices.  In addition, NUCA has itself been injured by Defendants' wrongful practices and seeks appropriate relief on its own behalf.

8.     Defendant AT&T Services, Inc. ("AT&T Services") is a corporation organized under the laws of the State of Delaware having its principal place of business

in Dallas, Texas. AT&T Services may be served with process through its registered agent, CT CORPORATION SYSTEM, 1200 South Pine Island Road, Plantation, Florida 33324.

9.    Defendant BellSouth Telecommunications, LLC ("BellSouth") is a corporation organized under the laws of the State of Georgia having its principal place of business in Atlanta, Georgia. BellSouth may be served with process through its registered agent, CT CORPORATION SYSTEM, 1200 South Pine Island Road, Plantation, Florida 33324.

10.    AT&T Services and BellSouth are subsidiaries and affiliates of AT&T, Inc., a holding company which has set up its corporate structure in a way that makes it difficult for Plaintiffs to determine the AT&T entity or entities with which class members have had contact. Bills sent to damagers customarily do not indicate a specific AT&T entity from which the bills are being sent, but rather simply contain the letters "AT&T" and its corporate logo. Plaintiffs allege that AT&T Services serves as the agent of AT&T, Inc. and the regional operating subsidiaries of AT&T, Inc., such as BellSouth, and handles all billings and collections for the matters at issue in this complaint. Plaintiffs also allege that AT&T Services collects the claims processing charge for its direct benefit to offset the costs it incurs rather than any costs incurred by any regional operating subsidiary such as BellSouth. Plaintiffs further allege that the money collected from class members is accounted for on a corporate level.    Regardless, and notwithstanding the manner in which it has been structured, the entire AT&T organization is run and effectively managed as a single corporate entity. Consequently, the regional operating subsidiaries are not necessary parties to this action. For purposes

4

of this complaint, Plaintiffs will refer to the entire AT&T organization collectively as "AT&T."

11.     This Court properly has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) in that this is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which ... any member of a class of Plaintiffs is a citizen of a State different from any defendant."

12.     Each of the Defendants is subject to the personal jurisdiction of this Court.

13.     Venue is proper under 28 U.S.C. § 1391(a), (b), and (c) in that Defendants are residents of this district and a substantial part of the events giving rise to Plaintiffs' claims occurred here.  Venue is also proper in the Jacksonville division of this District.

## FACTUAL ALLEGATIONS

14.     Defendants maintain underground and above-ground cables and other equipment – referred to as "facilities" – as part of their business of selling telecommunication services.  These facilities run along streets and highways and across real property owned by others. Frequently, as a result of nearby construction and other activities, Defendants' facilities are damaged.   In such cases, Defendants typically investigate and send a bill for the cost of repairs if they identify the person or entity they believe is responsible for the damage.

15.     Defendants' standard policy and practice is to mark up the bills sent to damagers with an undisclosed charge for "claims processing." This charge represents an allocation of Defendants' costs incurred in running their claims operation and collecting the costs of repair from damagers.  Included are the costs of such items as investigating

damage incidents, identifying who was at fault, sending bills to damagers, processing payments, and hiring outside collection agencies to collect unpaid bills. As used in this complaint, "claims processing" is meant to encompass the portion of Defendants' bills that includes Defendants' costs of processing claims, regardless of how those costs are described internally.

16.   Defendants are not legally entitled to recover for claims processing costs under the common law of any state in which Defendants do business.  Eight states -- Arizona, Colorado, Indiana, Maryland, Montana, North Dakota, Utah and Wyoming – have statutes that provide for recovery of attorneys' fees in certain cases involving damage to underground facilities.  Without conceding that any of these statutes permit the recovery of claims processing charges, Plaintiffs have decided not to assert claims to recover claims processing in those eight states for purposes of simplicity.

17.   Although immaterial changes have occurred over time, all of the bills sent by Defendants are generated using the same or similar computer systems, take the same or similar form, contain the same or similar information, and are marked up in the same or a substantially similar manner.  The bills indicate the date and location of the damage, briefly describe how the damage occurred, and list the specific "Cost to Repair."  Costs for labor, materials and independent contractors are detailed.   However, none of the bills disclose the markup for claims processing.

18.   Defendants also routinely bill damagers for another item for which they are not legally entitled to collect -- "loss of use" – because they have not incurred any loss of revenue or lost profits.

19.     The loss of use charge typically is calculated by a computer system using a common algorithm and applied to all bills on which the charge appears. To calculate the loss of use charge, Defendants use the maximum tariff rates that could be charged for services provided using the damaged equipment, notwithstanding that Defendants continue to collect these rates from customers. As a result, in many cases, Defendants effectively profit from the damage to their equipment, allowing them to collect for the same service from both damagers and customers. In other cases, Defendants charge damagers for loss of use when, in fact, they do not have any customers to whom service is provided through the damaged equipment. Defendants also apply a standard time in calculating the amount of their "loss of use" charge, regardless of the actual amount of time the damage equipment is out of service.

20.     Defendants attempt to justify their "loss of use" charge -- and the standard algorithm used to calculate the charge -- on the theory that they are entitled to rent a substitute for the damaged facility until the damage is repaired. In fact, however, Defendants do not rent a substitute and could not rent a replacement facility as there is no market for renting substitutes. Indeed, it would make no sense to rent a substitute as the process of installing the substitute would take at least the same amount of time necessary to repair the damage. Under the circumstances, the "loss of use" charge is nothing more than an effort to collect for losses that Defendants do not in fact incur.

21.     Defendants also routinely bill damagers for the cost of items that are not necessary to repair the damage. For example, Defendants routinely charge damagers with the cost of installing one or more "marker balls" when repairs are made. These marker balls are placed underground by AT&T to make it easier to locate facilities in the

future. Because the marker balls are installed for AT&T's own convenience, Defendants have no legal right to bill damagers for the costs.

22.     Each year, Defendants send tens of thousands of bills to those who have damaged AT&T facilities and collect millions of dollars from damagers.

23.     Blythe Development has received and paid bills from Defendants allegedly reflecting costs of repairing damage to their facilities on at least ten separate occasions. In so doing, Blythe Development unknowingly paid Defendants' improper claims processing charges. Blythe Development has also paid charges for loss of use and unnecessary items.

24.     Callaway Grading has received and paid bills from Defendants allegedly reflecting costs of repairing damage to their facilities on at least thirteen occasions. In so doing, Callaway Grading unknowingly paid Defendants' improper charges. Callaway Grading has also paid charges for loss of use and unnecessary items.

25.     Hinson Electric has received and paid bills from Defendants allegedly reflecting costs of repairing damage to their facilities on numerous occasions. The charges on many of these bills have been resolved through earlier litigation, including specifically *James D. Hinson Electrical Contracting Company v. BellSouth Telecommunications, Inc.*, Civil Action No. 3:07-CV-598-TJC-MCR (M.D. Fla.). Hinson Electric, however, did not resolve in earlier litigation the issue of whether BellSouth's loss of use charges were legal and appropriate and whether Hinson Electric is entitled to recover any overcharges paid for loss of use or unnecessary items as those matters were excluded from the scope of the release.

8

26.     There is a current and ongoing dispute between Hinson Electric and Defendants pertaining to the propriety of their loss of use charge and charges for unnecessary items.  Hinson Electric received a letter dated May 14, 2012 from a lawyer representing Defendants demanding that Hinson Electric pay a bill in the amount of $5,302.38 of which $2,427.38 allegedly was for loss of use.  The lawyer, acting on behalf of Defendants, threatened to sue Hinson Electric if the entire bill was not paid. Accordingly, Hinson Electric is uncertain of its rights and obligations and requests declaratory and injunctive relief.

## CLASS ACTION ALLEGATIONS

27.     **The National Class.**  Blythe Development and Callaway Grading bring this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3) and 23(c)(4)(A) of the Federal Rules of Civil Procedure on behalf of themselves and a national class of similarly situated persons. The national class seeks relief solely relating to Defendants' charges for claims processing and marker balls.   The national class is defined as follows:

> All those who paid a bill from AT&T or any of its affiliated companies for the cost of repairing damage to an underground or aboveground facility during the period from July 1, 2008 through the date the class is certified.

Excluded from the national class are the following:  (1) damagers who paid a bill relating to damage in Arizona, Colorado, Indiana, Maryland, Montana, North Dakota, Utah and Wyoming; (2) damagers who paid a bill from BellSouth for the cost of repairing an underground facility in Florida on or before March 28, 2011 but did not pay any bills for damage to facilities located outside of Florida, for damage to an aboveground facility in Florida, or for any loss of use charges; and (3) any persons or entities who furnished

Defendants with a written release of their claims or who have agreed in writing to arbitrate their claims.

28. **The BellSouth Subclass.**   Blythe Development and Callaway Grading also bring this action on behalf of a subclass comprised of damagers in the states in which BellSouth does business. The BellSouth subclass seeks relief relating to BellSouth's charges for claims processing, loss of use, and unnecessary items.   The BellSouth Subclass is defined as follows:

> All those who paid a bill from Bellsouth or AT&T for the cost of repairing damage to an underground or aboveground facility during the period from July 1, 2008 through the date the class is certified in any one of the following states:   Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee.

Excluded from the BellSouth subclass are:  (a) damagers who paid a bill from BellSouth or AT&T for the cost of repairing an underground facility in Florida on or before March 28, 2011 but did not pay any bills either for damage to facilities located outside of Florida or for damage to an aboveground facility in Florida; (b) damagers who furnished Defendants with a written release of their claims; and (c) damagers who have agreed in writing to arbitrate their claims.

29.   **The North Carolina Subclass.**  Blythe Development also brings this action on behalf of a subclass defined as follows:

> All those who have paid a bill from AT&T or BellSouth for the cost of repairing damage to an underground or aboveground facility located in North Carolina during the period from July 1, 2008 through the date the class is certified.

Excluded from the class are any persons or entities who furnished Defendants with a written release of their claims or who entered into a written agreement to arbitrate their

claims. The North Carolina Subclass seeks relief relating to Defendants' charges for claims processing, loss of use, and unnecessary items.

      30.   **The Georgia Subclass.**  Callaway Grading also brings this action on behalf of a subclass defined as follows:

> All those who have paid a bill from AT&T or BellSouth for the cost of repairing damage to an underground or aboveground facility located in Georgia during the period from July 1, 2008 through the date the class is certified.

Excluded from the class are any persons or entities who furnished Defendants with a written release of their claims or who entered into a written agreement to arbitrate their claims. The Georgia Subclass seeks relief relating to Defendants' charges for claims processing, loss of use, and unnecessary items.

      31. **The Florida Subclass.**  Hinson Electric also brings this action on behalf of a subclass defined as follows:

> All those who have received and/or paid a bill from AT&T or BellSouth for the cost of repairing damage to an underground or aboveground facility located in Florida during the period from July 1, 2008 through the date the class is certified.

Excluded are any persons or entities who furnished Defendants with a written release of their claims or who entered into a written agreement to arbitrate their claims. The Florida Subclass seeks relief relating to Defendants' charges for loss of use and unnecessary items.

## Rule 23(a)

      32.   This action may properly be maintained on a class basis and satisfies the requirements of Fed. R. Civ. P. 23(a) -- numerosity, commonality, typicality and adequacy.

33.     *Numerosity.*  The members of the national class and subclasses are so numerous as to render joinder impracticable.  Plaintiffs do not know the precise number of class members who have been overcharged by Defendants, but the number is believed to be in the tens of thousands nationally and in the thousands in the states at issue in the subclasses.

34.     *Commonality.*  There are numerous questions of law and fact common to all class members in the national class, including without limitation the following:

      a.     Whether the markup for claims processing is legally recoverable;

      b.     Whether the claims processing markup was disclosed on the bills;

      c.     Whether Defendants' conduct in charging and collecting amounts in excess of its actual repair costs, without disclosing the additional markups, constitutes unjust enrichment;

      d.     Whether Defendants can legally collect for the cost of equipment and other items that was not proximately caused by the damage to AT&T facilities;

      d.     Whether class members are entitled to recover the overcharges that they paid under the doctrine of unjust enrichment; and,

      e.     Whether injunctive and/or declaratory relief is appropriate.

35.     There are numerous questions of law and fact common to all class members in the BellSouth and state subclasses, including all of those that are relate to the national class as well as the following:

      a.     Whether Defendants' charge for alleged loss of use reflected a cost proximately caused by damage to their facilities;

b.      Whether the loss of use charge was legally collected by Defendants;

c.      Whether class members are entitled to compensatory damages as a result of paying the loss of use charges;

d.      Whether injunctive and/or declaratory relief is appropriate to stop the loss of use charges.

e.      With regard to the North Carolina subclass, whether Defendants' conduct violated the North Carolina Unfair and Deceptive Trade Practices Act and whether Plaintiffs are entitled to injunctive and/or declaratory relief under the terms of that Act; and,

f.      With regard to the Florida subclass, whether Defendants' conduct violated the Florida Unfair and Deceptive Trade Practices Act and whether Plaintiffs are entitled to injunctive and/or declaratory relief under the terms of that Act.

36.     *Typicality.*   The claims of the named plaintiffs and the absent class members are all tangible, have a common origin, and have a common basis.  The claims all originate from the same course of wrongful conduct, Defendants billed all class members in the same or substantially similar way, and all members paid bills that included costs in excess of Defendants' actual losses as a result of its standard policy of marking up the bills.  If prosecuted individually, the claims of each class member would necessarily rely upon the same material facts, rely upon the same theories, and seek the same relief.  As a result, the typicality requirement is satisfied.

37.     *Adequacy of Representation.*  Hinson Electric, Blythe Development and

13

Callaway Grading are willing and able to serve as class representative and undertake all of the resulting duties and obligations; will fairly and adequately protect the class members; have no interests adverse to other class members; and have retained counsel with substantial experience and success in the prosecution of class actions and complex litigation who are able to represent the interests of the national class and the subclasses.

## Rule 23(b)(2)

38.    In overcharging for the costs of repairing its facilities, Defendants are acting and have acted in a manner generally applicable to the national class and subclasses, thereby making appropriate final injunctive and declaratory relief for the classes as a whole.

## Rule 23(b)(3)

39.    The questions of law and fact common to all class members predominate over any questions affecting only individual members.

40.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy in that:

a)    Given the extensive common questions of law and fact, there are enormous economies to the courts and the parties in litigating the common issues on a class wide, instead of an individual, basis, particularly since class members are geographically dispersed;

b)    The expense and burden of individual litigation make it difficult for individual class members to redress the wrongs done to them, such that few individual class members have any interest in controlling the prosecution of separate actions;

14

c)      A class action is required for optimal deterrence and to limit the court awarded reasonable expenses incurred by class members in pursuing their claims; and,

d)      There are no unusual management difficulties posed by this action.

## Rule 23(c)(4)

41.     Plaintiffs may seek partial certification under Fed. R. Civ. P. 23(c)(4) in that questions of law and fact common to both classes exist as to all class members. Such a partial certification would be an alternative to certification under Fed. R. Civ. P. 23(b)(2) or 23(b)(3).

## COUNT I:    Unjust Enrichment on Behalf of the National Class and NUCA

42.     This claim is brought by Blythe Development and Callaway Grading on behalf of themselves and the members of the national class. The claim is also brought by NUCA on behalf of its members for the purpose of obtaining declaratory and injunctive relief.

43.     Blythe Development, Callaway Grading, and the other members of the national class conferred a substantial benefit upon Defendants when they paid the undisclosed markup for claims processing collected by Defendants, and when they paid Defendants for the costs of items that were not necessary to repair the Defendants' facilities.

44.     Defendants voluntarily accepted the overcharges, payment for unnecessary items, appreciated the value of the benefit conferred upon them, and retained this benefit.

45.     It would be inequitable under the circumstances for Defendants to

continue to retain the claims processing overcharges because the claims processing charge is not legally recoverable, class members paid the charge as a result of a mistake of fact, the charge was not disclosed, and the bills purportedly contained only the actual costs of repair. It also would be inequitable for Defendants to retain the amount paid by class members for items that were not necessary to repair the damage for which the class members were charged.

46.     As a direct and proximate result, Defendants have been unjustly enriched by the retention of overcharges and amounts paid for unnecessary items. In equity and good conscience the overcharges should be returned to the class members.

47.     Blythe Development, Calloway Grading, and the national class do not seek to recover in this action any overcharges for claims processing as a result of bills for damages to underground facilities in Florida that were paid on or before March 28, 2011.

## COUNT II: Unjust Enrichment
### on Behalf of the BellSouth, North Carolina, and Georgia Subclasses

48.     This claim is brought by Blythe Development and Callaway Grading on behalf of themselves and the BellSouth Subclass; by Blythe Development on behalf of itself and the North Carolina Subclass; and by Callaway Grading on behalf of itself and the Georgia Subclass. The claim is also brought by NUCA on behalf of its members for the purpose of obtaining declaratory and injunctive relief.

49.     The members of the BellSouth, Georgia and North Carolina subclasses conferred a substantial benefit upon Defendants when they paid the undisclosed markups for claims processing collected by Defendants.

50.     The members of the BellSouth, Georgia and North Carolina subclasses also conferred a substantial benefit upon Defendants when they paid the charges for "loss

16

of use," and when they paid Defendants for the costs of items that were not necessary to repair Defendants' facilities.

51.    Defendants billed and voluntarily accepted the payments from class members for claims processing, "loss of use," and the cost of items unrelated to repairing damage caused by class members.  Defendants furthermore appreciated the value of the benefit conferred upon them, and continue to retain this benefit.

52.    It would be inequitable under the circumstances for Defendants to continue to retain the amounts collected for claims processing because the amounts were not legally recoverable, class members paid the charge as a result of a mistake of fact, the charges were not disclosed, and the bills purportedly contained only the actual costs of repair.  Further, it would be inequitable for Defendants to benefit from their policy of collecting for alleged "loss of use" when in fact no compensable loss of use occurred, and their policy of charging damagers for costs not proximately caused by damagers.

53.    As a direct and proximate result, Defendants have been unjustly enriched by the retention of overcharges for claims processing, charges for "loss of use", and by charging and collecting for items that were unnecessary to repair the damage to their facilities.  In equity and good conscience should be returned to Plaintiffs and other class members.

## COUNT III: Violation of the North Carolina Unfair and Deceptive Trade Practice Act on Behalf of the North Carolina Subclass

54.    This claim is brought by Blythe Development on behalf of itself and the North Carolina Subclass.  The claim is also brought by NUCA on behalf of its members for the purpose of obtaining declaratory and injunctive relief.

55.     The North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1, prohibits unfair and deceptive acts and practices which affect commerce and proximately cause injury.

56.     Defendants committed unfair trade practices in violation of the statute by billing for and collecting charges for claims processing, loss of use, and unnecessary items.

57.     Defendants committed a deceptive trade practice in violation of the statute by billing for and collecting charges for claims processing, loss of use, and unnecessary items.

58.     Defendants' acts and practices affect commerce.

59.     As a proximate result of Defendants' violation of the statute, Blythe Development and other members of the North Carolina subclass have been damaged in that they paid amounts to which Defendants were not legally entitled.

### COUNT IV: Violation of FUDTPA on Behalf of the Florida Subclass

60.     The "Florida Deceptive and Unfair Trade Practices Act," F.S.A. § 501.201 et seq. ("FDUTPA") prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce. Anyone aggrieved by a violation of the Act is entitled to bring an action for declaratory and injunctive relief. In addition, any person who has suffered a loss as a result of a violation of the Act may recover actual damages, attorney's fees, and court costs. F.S.A. § 501.211.

61.     Defendants are and have been subject to the provisions of the Act in connection with their activities at issue in this action.

18

62.     Defendants have violated FDUPTA by charging and seeking to collect from damagers for "loss of use" and other amounts which were not actually incurred and were not proximately caused by damagers.

63.     Defendants' bills were and are misleading and deceptive in that they represent to damagers that AT&T suffered a financial loss due to its inability to use the damaged facility.  In fact, Defendants did not suffer a loss of use and they bill for items that were not proximately caused by the damage.

64.     A reasonable excavator or excavating contractor would understand that Defendants were collecting only their actual losses and costs to repair.  A reasonable excavator or excavating contractor would understand that Defendants are collecting only amounts that they were legally entitled to recover under Florida law.  A reasonable excavator or excavating contractor would not have understood that Defendants were marking up the charges detailed on the bills to collect amounts to which they were not legally entitled.  A reasonable excavator or excavating contractor would have relied upon these understandings created by Defendants in paying the bills.

65.     Defendants also did not disclose to damagers that the loss of use charges routinely would be written off if a damager complained and that one of the purposes of the charge was to give Defendants leverage in attempting to collect the bills.

66.     Hinson Electric is an "aggrieved party" within the meaning of FDUTPA in that it has received bills containing the improper loss of use and other charges and has been threatened with a lawsuit if the bills are not paid.  As a result, Hinson Electric as representative of the Florida subclass seeks a declaratory judgment that Defendants' loss of use charges are improper and injunctive relief preventing Defendants from continuing

to seek to collect the charges in Florida.

67.     The Florida subclass does not seek to impose liability on Defendants for any claim that was released by plaintiffs in *James D. Hinson Electrical Contracting Company v. BellSouth Telecommunications, Inc.,* Civil Action No. 3:07-CV-598-TJC-MCR (M.D. Fla.).

## PRAYER FOR RELIEF

WHEREFORE:   Plaintiffs, on behalf of themselves and the members of the national class and subclasses they seek to represent, as well as NUCA on behalf of itself and its members request the following relief:

(1)     An order certifying this action as a class action under Rule 23 of the Federal Civil Rules of Procedure and appointing Plaintiffs as representatives of the classes described above.

(2)     Judgment in favor of Plaintiffs and against Defendants for compensatory damages and pre-judgment interest in an amount to be determined as a result of Defendants' wrongful conduct.

(3)     Judgment in favor of Plaintiffs and against Defendants for attorney fees and other costs of this action.

(4)     Declaratory and injunctive relief to protect the rights of Plaintiffs.

(5)     And, such other further relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues that may be so tried.

SMITH HULSEY & BUSEY

By _____
      E. Lanny Russell

Florida Bar Number 0364088
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
lrussell@smithhulsey.com

DOFFERMYRE SHIELDS CANFIELD &
    KNOWLES, LLC
Kenneth S. Canfield (to be admitted *pro hac vice*)
kcanfield@dsckd.com
Robert E. Shields (to be admitted *pro hac vice*)
rshields@dsckd.com
1355 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Phone: 404-881-8900
Fax: 404-881-3007

LAW OFFICE OF DAVID S. HAGY, PLC
David S. Hagy (to be admitted *pro hac vice*)
dhagy@hagylaw.com
1507 16th Avenue South
Nashville, TN 37212
Phone: 615-515-7774

SMITH CURRIE & HANCOCK, LLP
Charles W. Surasky
Florida Bar No. 885940
cwsurasky@smithcurrie.com
2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, GA 30303
Phone: (404) 521-3800
Fax: (404) 688-0671

LEWIS & ROBERTS, PLLC
James A. Roberts   (to be admitted *pro hac vice*)
jar@lewis-roberts.com
3700 Glenwood Ave., Suite 410
Raleigh, NC 27612-5529
Phone: (919) 981-0191
Fax: (919) 981-0199

Gary V. Mauney (to be admitted *pro hac vice*)
gvm@lewis-roberts.com
One Southpark Center
6060 Piedmont Row Drive South, Suite #140
Charlotte, NC  28287
Phone:  (704) 347-8990

LAW OFFICE OF JOHN S. KALIL, P.A.
John S. Kalil
jkalil@akjaxlaw.com
Florida Bar No. 243061
6817 Southpoint Parkway, Suite 1402
Jacksonville, Florida 32216
Phone:  904-355-3311
Fax:  904-355-5411


*ATTORNEYS FOR PLAINTIFFS*

00822230.DOC

22