## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| JAMES D. HINSON ELECTRICAL CONTRACTING CO., INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action File No. 3:13-CV-29-J-32JRK |
| v. | ) ) ) | |
| AT&T SERVICES, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION TO STRIKE CLASS ALLEGATIONS

Defendants AT&T Services, Inc. and BellSouth Telecommunications, Inc. (collectively "AT&T") have moved to strike Plaintiffs' allegations relating to a 42 state "national" class and a nine state subclass, although not to the three proposed state-specific classes. According to AT&T, no multi-state class can be certified because the laws in each of the individual states are so fundamentally different that it is impossible for Plaintiffs to satisfy the predominance requirement of Rule 23(b)(3).  AT&T also argues certification is improper under Rule 23(b)(2). Thus, according to AT&T, the issue of certification can be decided based on the face of the complaint and without a factual record.  The motion lacks merit and should be denied.

Both multi-state classes assert one legal claim for relief – unjust enrichment. Under Florida's choice of law rules, the claim is governed by the law of the state in which AT&T received the allegedly unjust benefit.  That state is Missouri, where Plaintiffs allege all class members, regardless of where they were located, sent their payments and the benefits were thus received.  As a result, contrary to AT&T's assertion, the law of a single state will apply to the

unjust enrichment claims and its affirmative defenses.  While other states' laws may govern whether AT&T's charges were improper, those states' laws do not differ in any material way or otherwise make it impossible to establish predominance.

Even if the Court were not bound to follow Missouri law, it would be improper to strike the proposed multi-state classes at this stage of the litigation. Courts have frequently certified national classes in unjust enrichment cases, rejecting arguments such as those made by AT&T. Based upon the facts as alleged in the complaint, there do not appear to be any material state law differences causing a need for individualized determinations that would outweigh the common questions.  And, to the extent discovery establishes any material differences, certification is still appropriate if the class can be redefined to eliminate any predominance problems or the differing state laws can be sorted into a small number of groups with materially identical legal standards.

The decision whether to certify a class generally involves assessment of legal and factual issues that are inherently intertwined.  The certification decision thus is customarily made upon consideration of a plaintiff's motion filed after completion of any needed discovery. AT&T has not shown a compelling reason to short circuit the customary process.  Indeed, because AT&T has not challenged the three proposed state-specific classes, Plaintiffs will be filing a class certification motion and conducting largely the same discovery regardless of whether AT&T's motion to strike is granted.  Under the circumstances, even if the motion had any merit (which Plaintiffs vigorously assert it does not), practical considerations dictate that the motion be denied and that AT&T's predominance argument be taken up at a later time.

## FACTUAL BACKGROUND

The genesis of this case is an earlier class action brought before this Court, *James D. Hinson Electrical Contracting Company v. BellSouth Technologies, Inc.*, Case No. 3:07-cv-598-

J-32-MCR (M.D. Fla.) ("*Hinson I*").   In the earlier case, plaintiffs challenged BellSouth's practice in Florida of marking up bills to damagers with charges for claims processing and general corporate overhead.   The Court certified a class of damagers on each of their four legal theories – FDUTPA, unjust enrichment, fraud and money had and received; ruled that the claims processing charge was improper; and found that whether BellSouth's charge for general corporate overhead was proper turned on the factual issue of whether it reasonably related to the cost of repairs.   The case settled while the parties were litigating that factual issue.   Under the terms of the settlement, BellSouth agreed it would no longer assess a claims processing charge in Florida, make further disclosures regarding its corporate overhead charge, and reimburse class members for a portion of the charges it had collected during the class period.

Notwithstanding this Court's ruling in *Hinson I,* AT&T continues to charge damagers for claims processing outside of Florida.   In addition, AT&T assesses all damagers two other charges which Plaintiffs contend are unrecoverable.   One charge reflects AT&T's so-called "loss of use."   Although it does not suffer any out-of-pocket loss other than repair costs, AT&T asserts it suffers an intangible loss that is compensable.   It values this intangible loss with a computer algorithm that calculates the hypothetical cost of renting a temporary replacement while the repairs are made, notwithstanding that AT&T never rents a replacement facility; there is no rental market for replacements; and it would be nonsensical to install a replacement rather than immediately repair the damage.   The other charge challenged by Plaintiffs – referred to here as the "unnecessary equipment" charge – reflects the cost of equipment that is not needed to repair the damage.   An example is "marker balls," which AT&T installs to make it easier to locate underground cables in the future.   Plaintiffs contend they may properly be charged only for the costs proximately caused by the damage, not the costs of upgrading AT&T's system.   These

three charges – claims processing, loss of use and unnecessary equipment – are at issue in this case.  Plaintiffs do not challenge the corporate overhead charge at issue in *Hinson I*.

The complaint seeks relief on behalf of a 42 state "national" class, a "BellSouth" subclass involving nine states, and three subclasses of damagers in North Carolina, Georgia and Florida. The class and all subclasses assert the same underlying legal theory – *i.e.,* unjust enrichment.  In addition, the Florida and North Carolina subclasses assert claims under each state's unfair and deceptive trade practices acts.  The various classes are generally described below:

(1)  ***The National Class***.  The national class challenges only the claims processing charge on an unjust enrichment theory.  It is comprised of damagers in 42 states.  The complaint alleges that each of those states follows the American rule under which a party must bear its own litigation fees and expenses in the absence of a statute providing otherwise and that none of the states has such a statute.

(2)  ***The BellSouth Subclass***.  In addition to the claims processing charge, the BellSouth subclass challenges the loss of use and unnecessary equipment charges under an unjust enrichment theory.  The class is comprised of damagers in the nine states in which BellSouth does business – *i.e.,* Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina and Tennessee.  Claims that were settled in *Hinson I* are excluded.

(3)  ***The North Carolina Subclass***.  The North Carolina subclass – comprised of damagers who paid a bill for damage done to in that state – challenges all three charges on an unjust enrichment theory and the North Carolina Unfair and Deceptive Trade Practices Act.

(4)  ***The Georgia Subclass***.  The Georgia subclass challenges all three charges on an unjust enrichment theory.  It is comprised of damagers who paid a bill for damage in Georgia.

(5)   *The Florida Subclass.*  The Florida subclass challenges only the loss of use and unnecessary equipment charges.  As currently defined, the subclass – unlike the class and other subclasses – does not seek damages, but only declaratory and injunctive relief.

Defendants have not yet answered the complaint, but instead have moved to dismiss the claims asserted by the Florida and North Carolina subclasses under FDUTPA and the North Carolina Unfair and Deceptive Trade Practice Act.  In addition, AT&T has moved to strike the multi-state class actions.  No discovery has yet occurred.

## ARGUMENT

It is well established that motions to strike pursuant to Rule 12(f) such as the one filed here by AT&T seek an extreme result and are not often successful:

> Because striking a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.

5C C. Wright & A. Miller, *Federal Practice and Procedure,* § 1380 at 394 (3d ed. 2004); *see also, e.g., Quitto v. Bay Colony Golf Club,* 2006 U.S. Dist. LEXIS 93959 (M.D. Fla. Dec. 29, 2006).  Motions to strike class action allegations, in particular, are subject to an incredibly high standard.  To prevail on such a motion, a defendant must establish from the face of the complaint that class certification is "impossible."  *See, e.g., Romano v. Motorola, Inc.,* 2007 U.S. Dist. LEXIS 86472, at *2 (S.D. Fla. Nov. 26, 2007) (a motion to strike class action allegations seeks "an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiffs") (internal citations omitted); *Oginski v. Paragon Prop. of Costa Rica, LLC,* 2011 U.S. Dist. LEXIS 88254 (S.D. Fla. August 9, 2011) (same); *Bryant v. Food Lion, Inc.,* 774 F. Supp. 1484, 1495 (D.S.C. 1991) (same).  For the reasons set forth below, AT&T has not shown certification is impossible.

## I.       STATE LAW VARIATIONS DO NOT PRECLUDE CLASS CERTIFICATION

AT&T asserts that "when the laws of many different jurisdictions would apply to the claims of a putative class, a class may not be certified."  AT&T's Brief at 6.  This assertion is incorrect.   While it is true that when state law variations swamp any common issues the predominance requirement of Rule 23 usually cannot be met, the simple fact that the laws of more than one state may apply is not fatal.  A multi-state class can be certified when it is based upon the law of one state, a principle of law that is uniform among the various states, or any substantial state law variations can be sorted into a small number of groups with materially identical legal standards.  *See, e.g., Klay v. Humana, Inc.,* 382 F.3d 1241, 1262 (11th Cir. 2004); *see generally Newberg on Class Actions,* § 4.61 (listing five distinct situations in which multi-state classes can be certified).   Such is the case here.

### A.       Plaintiffs' Unjust Enrichment Claims and AT&T's Defenses are Governed by Missouri Law

It is axiomatic that a federal district court sitting in diversity applies the choice-of-law rules of the state in which it is located, in this case Florida.  *See, e.g., U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.,* 550 F.3d 1031, 1033 (11th Cir. 2008).   Florida law follows the doctrine of *lex loci contractus* with regard to unjust enrichment claims.   *See Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir. 1996).   Under the doctrine, the applicable law is that of the place where the contract was executed or where the last act necessary to complete the contract was done.   *See In re Nationsrent Rental Fee Litigation*, 2009 U.S. Dist. LEXIS 23662, at *10 (S.D. Fla. Feb. 24, 2009); *Am. Home Assurance Co. v. Weaver Aggregate Transport, Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011).   This Court has held that with regard to unjust enrichment cases the last act necessary to establish

liability is "the acceptance and retention of the benefit conferred." *McMahan v. Barker*, 2007 U.S. Dist. LEXIS 100402, *22 (M.D. Fla. Dec. 12, 2007).

It appears that AT&T accepted and retained the benefits conferred by all class members in Missouri. Plaintiffs allege that the claims and billing operations for the entire AT&T organization are centralized in one subsidiary – *i.e.,* Defendant AT&T Services, Inc. – which handles all collections. (Complaint at ¶ 10) Plaintiffs further allege that damagers across the country send their payments to the subsidiary's office in St. Louis and that AT&T accepts the payments there. This allegation is supported by the bills sent to each of the named plaintiffs, which instruct that payments are to be sent to the following address: "AT&T, 909 Chestnut Street, Room 39-N-13, St. Louis, Missouri 63101-3099." (See bills sent to plaintiffs Blythe Development, James D. Hinson Electrical Contracting Company, and Callaway Grading, Inc. attached as Exhibit 1)

Under Florida's choice-of-law rules, Missouri law thus applies to Plaintiffs' unjust enrichment claims.[1] Missouri law also provides the statute of limitations – *see Lumbermens Mut. Casualty Co. v. August*, 530 So. 2d 293, 295-296 (Fla. 1988) (using the doctrine of *lex loci contractus* to determine the statute of limitations in a contract case); *Western Group Nurseries, Inc. v. Ergas,* 211 F. Supp. 2d 1362, 1366 (S.D. Fla. 2002) (statutes of limitations are considered substantive, not procedural issues under Florida law) – and governs AT&T's voluntary payment defense. *See Taylor, Bean & Whitaker Mort. Corp. v. GMAC Mort. Corp.*, 2007 U.S. Dist. LEXIS 27061 (M.D. Fla. Apr. 12, 2007) (applying Pennsylvania's voluntary payment doctrine

---

[1] To the extent that AT&T disputes the application of Missouri law on the ground that it receives the allegedly unjust benefits elsewhere, that issue cannot be resolved in connection with a motion to strike. Resolving the issue likely will entail a "fact-intensive inquiry." *See Am. Home Assur. Co. v. Weaver Aggregate Transport, Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011).

where, under the Florida choice-of-law analysis, the law of Pennsylvania otherwise applied).[2]

**B.**    **Even if Missouri Law Governing Unjust Enrichment Claims Does Not Apply, There are No Predominance Problems.**

Even if the Court were not bound to apply Missouri law, AT&T's motion should be denied. A proper predominance analysis requires more than simply determining whether there are any state law variations. If there are variations, a court must look to see if the variations are material; consider whether those material variations will require individualized determinations; if so, assess whether those individualized issues predominate over the common ones; and figure out whether materially different state laws can be sorted out into groups. *See generally Klay v. Humana, Inc.,* 382 F.3d at 1254 ("It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."); 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 1778 at 120 ("the court is under a duty to evaluate the relationship between the common and individual issues in all actions under Rule 23(b)(3).") Conducting this analysis logically requires an understanding of all the material factual and legal issues.

While there may be cases in which a predominance analysis can be done based solely on the allegations of the complaint, this is not one. Contrary to AT&T's claim, state laws relating to unjust enrichment, the applicable statute of limitations, and the voluntary payment doctrine are not so different that the proposed multi-state classes are "inherently uncertifiable." While there are differences, AT&T has not shown that any of them are material, create a need for

---

[2] The relative simplicity of Plaintiffs' unjust enrichment claims under Missouri law is readily apparent. They must prove three elements, *i.e.,* that (1) they conferred a benefit on AT&T; (2) AT&T appreciated the benefit; and (3) it would be unjust for AT&T to retain the benefit. *See Howard v. Turnbull*, 316 S.W. 3d 431 (Mo. App. W.D. 2008). There is no question that class members conferred benefits on AT&T and that AT&T knew about them. Because the retention of an improper charge is unjust in Missouri, *see Finnegan v. Old Republic Title Co.*, 246 S.W. 3d 928 (Mo. 2008), the only unresolved issue is whether AT&T's charges were improper.

individualized determinations, or otherwise make it impossible to meet the predominance requirement. Plaintiffs turn now to the law applicable to their claims and AT&T's defenses. In so doing, it should be emphasized that Plaintiffs assert all of these claims and defenses will be governed by Missouri law. The discussion in this section of the brief extending for the next several pages is relevant only if Plaintiffs' assertion that Missouri law applies is not correct.

### (1)   <u>Unjust Enrichment</u>

While the laws of the states governing unjust enrichment are expressed in varying words, there are few real differences. In each state, the focus of the claim is whether the defendant was unjustly enriched. (See state law survey of unjust enrichment law attached as Exhibit 2)  At the core of each state's law are two fundamental elements – *i.e.,* that the defendant received a benefit from the plaintiff and that it would be inequitable for the defendant to retain that benefit. *See, e.g., O'Brien v. Brain Research Labs, Inc.,* 2012 U.S. Dist. LEXIS 113809 at *16 (D.N.J. Aug. 8, 2012) ("The laws of the fifty states are relatively uniform with regard to the elements of proof of an unjust enrichment claim.")  That the fundamental elements are expressed in different words or in five as opposed to three factors is meaningless. *See In re Nationsrent Rental Fee Litigation*, 2009 U.S. Dist. LEXIS 23662 at *37-38 (S.D. Fla. Feb. 23, 2009); *Schumaker v. Tyson Fresh Meats,* 221 F.R.D. 605, 612-13 (D.S.D. 2004).

Such minor differences in wording do not defeat predominance. *See, e.g., Morangelli v. Chemed Corp.,* 275 F.R.D. 99 (E.D.N.Y. 2011)("Distinctions between state laws matter only when they create meaningful differences among the members of the nationwide class. Otherwise, a nationwide class on state claims could never be certified; state legislatures rarely speak with one voice"), *citing Cruz v. Hook-SuperRx, L.L.C.*, 2010 U.S. Dist. LEXIS 81021, at *13 (S.D.N.Y. Aug. 5, 2010) ("There is no per se bar to multi-state class actions. Minor

differences do not defeat class certification"); *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 298 (D. Conn. 2009) (noting that minor differences between state laws in multi-state class actions do not defeat certification).  Accordingly, numerous courts have certified national and multi-state unjust enrichment classes, including in two recent MDLs pending before federal courts in Florida.  *See, e.g., In re Nationsrent Rental Fee Litigation*, 2009 U.S. Dist. LEXIS 23662 at * 37-38; *In re Checking Account Overdraft Litigation,* 275 F.R.D. 666, 677-678 (S.D. Fla. 2011); *O'Brien v. Brain Research Labs, Inc.,* 2012 U.S. Dist. LEXIS 113809 at *16 (D.N.J. Aug. 8, 2012); *In re Abbott Laboratories Norvir Antitrust Litigation,* 2007 U.S. Dist. LEXIS 44459 at *24-29 (N.D. Cal. Dec. 13, 2007); *Schumaker v. Tyson Fresh Meats,* 221 F.R.D. at 612-13.  In so doing, the courts rejected arguments similar to the one made by AT&T, concluding the minor differences bearing on unjust enrichment did not defeat predominance.[3]

Even if the state law variations were significant rather than minor, AT&T's motion still should be denied.  That is because the only variations that matter are those which are material in the context of the facts and claims in a particular case. None of the state law differences upon which AT&T relies appears to have any materiality here.  For example, AT&T argues that state unjust enrichment laws differ in whether they recognize an unclean hands defense, require the

---

[3] Typical is  a recent decision from the Southern District of Florida, which concluded:

> Although Defendants noted that the law of the various states differs to some extent regarding the elements which must be established for an unjust enrichment claim, Defendants concede that it is true that many elements are broken down more precisely in some states, such that the number of elements in and of itself is not a material variance. The Court finds that there are not differences which are significant enough to  outweigh  the  legal  issues  which  are  common  to  the proposed class … . *See Klay*, 382 F.3d at 1254 (citing *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002)) (stating that 'it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.") .

*In re Nationsrent Rental Fee Litigation*, 2009 U.S. Dist. LEXIS 23662 at *37-38.

same degree of fault, or allow a claim if an adequate legal remedy exists.  However, AT&T has

not shown that it has an unclean hands defense, that it lacked the requisite degree of fault, or that

class members have an adequate legal remedy.  Unless it does so, any of the alleged variations of

state law are immaterial and thus cannot defeat certification.  Moreover, as noted above, even

material variations are not fatal if they can be sorted into a small number of groups with identical

legal standards. *See Klay v. Humana, Inc.,* 382 F.3d at 1262.  AT&T has not shown it would be

impossible to do that here.

### (2)   Statute of Limitations

 "Statute of limitations defenses – like damage calculations, affirmative defenses, and

counterclaims – rarely defeat class certification." 2 *Newberg on Class Actions* § 4:57 (5th ed.)

Accordingly, while there are some exceptions, courts generally do not deny certification because

of varying statute of limitations. *See, e.g., Hoxworth v. Blinder, Robinson & C*o., 980 F.2d 912,

924 (3d. Cir. 1992); *Steinberg v. Nationwide Mut. Ins. Co*., 224 F.R.D. 67, 78 (E.D.N.Y. 2004),

*citing In re Energy Systems Equipment Leasing Sec. Litigation*, 642 F. Supp. 718, 753 (E.D.N.Y.

1986) ("Courts have been nearly unanimous . . . in holding that possible differences in the

application of a statute of limitations to individual class members, including the named plaintiff,

does not preclude certification of a class action so long as the necessary commonality, and, in a

23(b)(3) class action, predominance, are otherwise present").

That differing statute of limitations create no predominance or manageability problems

here is readily apparent.  As the Court is aware from *Hinson I,* AT&T keeps detailed computer

records relevant to this action, including the identity of damagers, the date claims are paid, and

the state in which the damage occurred.  Plaintiffs intend to prove class membership and

damages through using AT&T's computerized records just as was done in *Hinson I.*  It should be

an easy matter for Plaintiffs' expert to exclude from the proposed classes all damagers whose claims arose before the date at the furthest extent allowed by the applicable statute of limitations. The process of doing so will involve simply adding another field to the computer analysis.

### (3)    **Voluntary Payment Doctrine**

As this Court has recognized: "Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Hinson I*, 275 F.R.D. at 647-68 (*citing Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 39 (1st Cir. 2003)); *see also* 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778 (when common issues otherwise predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as … affirmative defenses peculiar to some individual class members"); 2 *Newberg on Class Actions* § 4:56 (5th ed.)

The simple fact that AT&T has asserted a voluntary payment defense does not preclude certification.  *See In re Checking Account Overdraft Litigation*, 275 F.R.D. 666, 677-678 (S.D. Fla. 2011) (differences in state law bearing on the voluntary payment doctrine did not preclude certification of a multi-state class seeking to recover undisclosed overcharges); *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 45-46 (E.D. N.Y. 2008).  As with the alleged variations of state law relating to unjust enrichment, a proper predominance analysis requires the Court to weigh the common and individual issues and in the process to determine whether any alleged state law variations are material.  While AT&T has pointed out a variety of state law differences regarding the voluntary payment doctrine, it has not even attempted to show that these differences raise material individual issues here or that any differences could not be dealt with by sorting them into smaller groups.

In fact, an examination of the survey of state voluntary payment law attached to AT&T's brief demonstrates there are no relevant material differences relevant to its defense.  According to the survey, the voluntary payment doctrine generally does not apply to payments made under a mistake of fact.  Indeed, AT&T specifically acknowledges that "a payment made under a mistake of fact is recoverable" under the laws of the various states.  See AT&T Brief at 18.  This concession is fatal to AT&T's argument.  Plaintiffs allege here that they paid the charges at issue under a mistake of fact – as was the case in *Hinson I* – because AT&T did not disclose all of the material information needed to understand what AT&T was doing.  The claims processing charge, for example, did not even appear on AT&T's bills.  Assuming these allegations prove to be correct, the payments made by class members were not "voluntary" under the laws of any state in the proposed classes.  Whether the voluntary payment defense has merit thus is a common issue, not an individual one, and as such does not raise predominance concerns.

### C.   The Need to Analyze State Laws Relating to the Propriety of AT&T's Charges Does Not Create Predominance Problems

Plaintiffs concede that regardless of whether Missouri law or the laws of multiple states apply to their unjust enrichment claims, the Court will need to assess the laws of the states in which the damage occurred to determine if the three charges at issue were improperly collected.  That is so because to prevail on an unjust enrichment claim under the laws of each state a plaintiff must prove that the retention of a benefit received by the defendant would be unjust or inequitable.  However, the need for such a multi-state legal analysis does not create any predominance problems because it is readily apparent under each state's law that AT&T was not entitled to collect the charges.   The relevant law is addressed separately below.

### (1)   The Claims Processing Charge

This Court addressed the claims processing charge assessed by BellSouth at length in

*Hinson I,* 796 F. Supp. 2d at 1351, concluding that it was designed to recoup the expenses of investigating and processing claims and thus was unrecoverable under Florida law.  In so doing, the Court relied upon the fact that Florida follows the American Rule under which each party bears its own litigation expenses in the absence of a statute to the contrary and case law from other jurisdictions interpreting the American Rule to prohibit pre-litigation expenses as well.  *Id.* After an extensive search, the Court found no cases in the country allowing a party such as BellSouth to collect its pre-litigation expenses.

Plaintiffs contend that the claims processing charge assessed by AT&T is akin, if not identical, to the one assessed by BellSouth and that the charge is unrecoverable under the laws of states other than Florida for the same reasons expressed by this Court in its *Hinson I* analysis. Every state except for Alaska follows the American Rule.  (See the state law survey relating to the American Rule attached as Exhibit 3)  Accordingly, in the absence of a state statute authorizing collection of pre-litigation fees and expenses, AT&T's claims processing charge is improper.  The only statutes that even arguably could authorize AT&T to collect its pre-litigation expenses are the One-Call statutes adopted by most, but not all, states, some of which create a statutory remedy for utilities to collect from damagers.  None of the One-Call statutes, however, specifically allows or has been interpreted to allow a utility such as AT&T to collect the charges at issue here.  (See the survey of state One-Call statutes attached as Exhibit 4.)

Several of the states which have adopted One-Call statutes do allow a utility to recover its reasonable attorney's fees. There is a compelling argument that AT&T's claims processing charge is improper even in those states with One-Call statutes allowing recovery of attorney's fees and expenses.  Indeed, the only case this Court found analyzing an analogous charge, *Curt's Trucking Co. v. Anchorage,* 578 P.2d 975 (Alaska 1978), comes from a state that does not follow

the American Rule and allows recovery of attorney's fees.  *See O'Connell v. Will*, 263 P. 3d 41, 47 (Alaska 2011) (stating that Alaska does not follow the American Rule).  Nevertheless, to simplify the legal analysis when drafting the complaint, Plaintiffs attempted to exclude from the national class those states with One-Call statutes providing for attorney's fees.  That is the reason the national class only covers 42 rather than all 50 states and the District of Columbia.[4]

AT&T argues that despite Plaintiffs' effort to limit the scope of the class the need for this Court to analyze the various One-Call statutes will be so extensive that establishing predominance will be impossible.  This argument is without merit.  Twenty four states – AL, AK, AR, CT, DE, IA, KS, KY, MA, MO, NH, NC, NJ, NV, OH, OR, PA, RI, SC, SD, TX, VT, WA, and WI – have statutes that do not even create a civil remedy for damages.  The Court need not do anything more than read the statutes to confirm that none of them authorize AT&T to recover anything from damagers.  Furthermore, statutes in ten states – DC, GA, ID, MN, MS, MT, NE, NM, NY, and OK – expressly tie recoverable damages to the cost of repair.  Accordingly, it is readily apparent with little or no analysis that in 34 states AT&T's claims processing charge is not authorized by statute and thus could not properly be assessed.

The statutes in the remaining states arguably are less clear, and thus may require more analysis.  Yet, none of them should be read to allow AT&T to assess a claims process charge.  The Illinois statute simply states that damagers are liable for the "damage caused to" the owner

---

[4] AT&T correctly asserts Plaintiffs erroneously failed to exclude three states from the national class that have statutes allowing for attorney's fees – HI, LA, and ME.  If the class proposed in their certification motion continues to exclude states with such statutes, Plaintiffs will remove the three states.  However, AT&T incorrectly asserts that Illinois has a statute allowing it to collect attorney's fees.  The statute upon which AT&T relies is not part of the state's One-Call scheme and is irrelevant on its face.  It creates a special remedy for intentional interference with "public utility services," which are defined to include "gas or electric services" furnished by a public utility and electric services furnished by electric cooperatives, 40 Ill. Comp. Stat. Ann. 95/2, not the telecommunication services provided by AT&T.

of the facility.  The statutes in Virginia and West Virginia are almost identical to the Florida statute construed by this Court in *Hinson I* and thus should be construed in the same way. *Compare* Fla. Stat. § 566.106(2)(a) (allowing recovery of  "the total sum of the losses . . . as those costs are normally computed") *with* Va. Code Ann. § 56-265.25 (damager is liable for "the total cost to repair the damaged facilities as that cost is normally computed") *and* W. Va. Code § 24C-1-5 (damager is liable for "the total cost to repair the damage in an amount equal to that as is normally computed by the operator").  And, while AT&T correctly points out the Tennessee statute provides that "the financial impact of all damages to underground utilities shall be calculated using generally accepted accounting principles (GAAP)," the statute does not provide an independent civil remedy.  Tenn. Code Ann. §§ 65-31-111 and 112.

In short, the process of determining whether the claims processing charge is improper will not be difficult or otherwise so complicated that satisfying the predominance test is impossible.  Courts routinely conduct far more complex analysis of state law in multi-district proceedings and other multi-state class cases.  Indeed, if the Court were to decline to conduct such an analysis here, the only alternative to protect class members' rights would be to file additional state specific class actions, which would likely lead to the creation of a multi-district proceeding and only serve to complicate and delay final resolution of the pending issues.

### (2)    The Loss of Use and Unnecessary Equipment Charges

The national class does not challenge the loss of use or unnecessary equipment charges. Of the two proposed multi-state classes, only the BellSouth subclass does so.  As a result, the law of only nine states need be consulted to determine if the charges are improper.  In its motion, AT&T does not address the law of any of the nine states, all but admitting through its silence that

these laws do not create predominance problems.  Because the issue was not addressed by AT&T, Plaintiffs' discussion will be abbreviated as well.

With regard to the loss of use charge, a number of courts, including in two states within the BellSouth class, have specifically held that similar loss of use charges by other utilities are non-recoverable because no loss of use occurred or that it is improper to attempt to calculate such a loss based upon the hypothetical value of renting a replacement cable.  *See, e.g., MCI v. Mastec,* 544 F.3d 1200, *1201 (11th Cir. 2008), quoting MCI v. Mastec,* 995 So.2d 221 (Fla. 2008); *MCI Communication Services, Inc. v. Murphree Bridge Corp*., 2010 U.S. Dist. LEXIS 37673 (N.D. Fla. Apr. 16, 2010); *MCI Communication Services, Inc. v. CMES,* Inc., 291 Ga. 461, 728 S.E.2d 649 (2012).  AT&T has not asserted any reason to believe that the laws in the other seven states within the BellSouth subclass are any different.  And simply because the Court may need to analyze the laws of those states does not establish individual issues will predominate as a matter of law.[5]

Similarly, with regard to the unnecessary equipment charges, the laws of every state in the BellSouth subclass preclude a plaintiff from recovering damages which are not proximately caused by the defendant.  (See state law survey relating to proximate charge attached as Exhibit 5)  Plaintiffs assert – and AT&T has not even denied – that the expenses reflected in its unnecessary equipment charges were not proximately caused by class members.  Accordingly, the charges are improper, can be recovered by Plaintiffs under their unjust enrichment claims, and do not result in any predominance problems precluding certification of the BellSouth subclass.

---

[5] In any event, depending on the course of future proceedings, it is possible that Plaintiffs may choose to redefine the BellSouth subclass to include only those states whose courts have already rejected similar loss of use charges.  In so doing, they would exclude some of the states currently in the subclass and add others which are not.

## II.     CERTIFICATION UNDER RULE 23(b)(2) IS NOT IMPOSSIBLE.

Finally, AT&T argues that neither of the multi-state classes can be certified under Rule 23(b)(2) for two reasons – *i.e.,* that there are too many state law variations to have a cohesive class and that money damages are not available to a 23(b)(2) class. AT&T's first argument fails because, as discussed at length above, there are no material state law variations precluding certification.   AT&T's second argument fails because money damages are recoverable by a 23(b)(2) class where, as here, the damages are incidental to the equitable relief being sought – that is the requested damages flow to the class as a whole, not introduce new legal issues, and not entail complex individualized determinations.  *See Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001); *In re Monumental Life Ins. Co.,* 365 F.3d 408 (5th Cir. 2004); 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1784.1.

Contrary to AT&T's claim, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) does not foreclose a 23(b)(2) class from recovering incidental damages.  *See Id.* at 2557 (holding that claims for monetary relief cannot be certified under (b)(2), "at least where … the monetary relief is not incidental to the injunctive or declaratory relief"); *FPX, LLC v. Google, Inc.*, 276 F.R.D. 543, 552 (E.D. Tex. 2011) (noting that the Supreme Court left the issue open in *Wal-Mart*).  Whether Plaintiffs' claims, in fact, are incidental is a factual issue that cannot be resolved on a motion to strike.[6]

---

[6] In *Hinson I,* this Court rejected certification under Rule 23(b)(2) because most of the class members had paid only one damage claim and thus did not face a risk of recurring harm.  See 275 F.R.D. at 648 n. 8.  AT&T did not raise this issue in its motion to strike, presumably because that fact was not apparent on the face of the complaint and thus is inappropriate to resolve at this stage of the litigation.  Nevertheless, in light of the Court's earlier ruling, if discovery discloses that in fact most damagers do not face a risk of recurring harm, Plaintiffs do not intend to seek certification under Rule 23(b)(2).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order denying AT&T's motion to strike in its entirety.

SMITH HULSEY & BUSEY


By _____/s/ E. Lanny Russell_____
E. Lanny Russell
James A. Bolling
Florida Bar Number 0364088
225 Water Street, Suite 1800
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
lrussell@smithhulsey.com
jbolling@smithhulsey.com


DOFFERMYRE SHIELDS CANFIELD &
KNOWLES, LLC
Kenneth S. Canfield (to be admitted *pro hac vice*)
kcanfield@dsckd.com
Robert E. Shields (to be admitted *pro hac vice*)
rshields@dsckd.com
1355 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia  30309
Phone:  404-881-8900
Fax:  404-881-3007


LAW OFFICE OF DAVID S. HAGY, PLC
David S. Hagy (to be admitted *pro hac vice*)
dhagy@hagylaw.com
1507 16th Avenue South
Nashville, TN  37212
Phone:  615-515-7774

SMITH CURRIE & HANCOCK, LLP
Charles W. Surasky
Florida Bar No. 885940
cwsurasky@smithcurrie.com
2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, GA 30303
Phone: (404) 521-3800
Fax: (404) 688-0671


LEWIS & ROBERTS, PLLC
James A. Roberts   (to be admitted *pro hac vice*)
jar@lewis-roberts.com
3700 Glenwood Ave., Suite 410
Raleigh, NC 27612-5529
Phone: (919) 981-0191
Fax: (919) 981-0199

Gary V. Mauney (to be admitted *pro hac vice*)
gvm@lewis-roberts.com
One Southpark Center
6060 Piedmont Row Drive South
Suite #140
Charlotte, NC  28287
Phone:  (704) 347-8990


LAW OFFICE OF JOHN S. KALIL, P.A.
John S. Kalil
jkalil@akjaxlaw.com
Florida Bar No. 243061
6817 Southpoint Parkway, Suite 1402
Jacksonville, Florida  32216
Phone:  904-355-3311
Fax:  904-355-5411

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on April 29, 2013, I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James F. Bogan, III, Esq., Cindy D. Hanson, Esq., Taylor Higgins Ludlam, Esq. and Kathryn Ederle, Esq., Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street, Suite 2800, Atlanta, Georgia, 30309-4528 and Albert L. Frevola, Jr., Esq., Conrad & Scherer, LLP, 633 South Federal Highway, 8th Floor, Fort Lauderdale, Florida 33301.

_s/ E. Lanny Russell_
Attorney

**Plaintiffs' Opposition to Defendants'
Motion to Strike Class Allegations**

# Exhibit 1

Bills Sent to Plaintiffs Blythe Development,
James D. Hinson Electrical Contracting Company,
and Callaway Grading, Inc.

*James D. Hinson Electrical Contracting, Inc., et al. v. AT&T Services, Inc., et al.*
U.S. District Court, Middle District, Florida, Jacksonville Division
No. 3:13-cv-29-J-32JRK

AT&T-MO73-18        8/24/2009 4:24:32 PM  PAGE   3/004   Fax Server

 **at&t**                     <u>**Claim For Damages**</u>

To: HINSON ELECTRIC                               Date:  06/12/2009
    11609 COLUMBIA PARK DR                         Page 1 of 1
    JACKSONVILLE, FL 32258                 Claim #:  BLST-62-200906-30-0014-JSM

---

Charges for Damages to:          AT&T SOUTHEAST (BELLSOUTH) FACILITIES

Occurred/Discovered On or About:  05/29/2009

Approximate Location:            INTERSECTION OF MAYPORT RD AND STANLEY RD / NE CRNR( 1805 MAYPORT RD ),
                                 JACKSONVILLE BEACH, FL

How Damage Occurred:             HIT  WITH BOREHEAD

The following amounts include direct and indirect costs covering repair of this damage including but not limited to personnel, equipment and vehicles.

| | |
|---|---|
| LABOR COST: | $1,800.87 |
| MATERIALS/UNIT COST ITEMS: | $284.48 |
| CONTRACTOR: | $654.86 |
| LOSS OF USE: | $748.00 |
| OTHER: | $0.00 |
| **TOTAL AMOUNT DUE:** | **$3,488.21** |

(**** PLEASE DO NOT PAY WITH TELEPHONE BILL ****)
Remit Payment to:
AT&T
909 Chestnut Street
Room 39-N-13
St. Louis, MO 63101-3099
** INQUIRIES 800-894-0374 or 800-363-3234 (FAX)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Return this section with payment

This payment is due upon receipt.  If payment is not received within 30 days further collection action will be taken.  IF A PAYMENT FOR LESS THAN
THE FULL AMOUNT IS RECEIVED, IT WILL BE APPLIED AS A PARTIAL PAYMENT.

If you are covered by insurance, please forward this to your carrier for payment.  Once your claim has been established with your insurance company, please
contact us at 800-894-0374 with your claim information, and we will work with your insurance company to resolve.

AT&T accepts checks, money orders or credit card payments.  We do not accept cash.  Please complete the information below and return to the address above or
you may call 800-894-0374 to pay by phone.

Credit Card number: _____     Three digit security number on back of card: _____

Name on Card: _____     Expiration Date: ____/____/_____

Amount to be charged to your card: $_____     SIGNATURE: _____

Claim #:  BLST-62-200906-30-0014-JSM        (Please write claim number_

HI-0000177

 **at&t**

# Claim For Damages

**To:** CALLAWAY GRADING
505 STEELE DR
HAMPTON, GA 30228

Date:  06/24/2009
Page 1 of 1
Claim #:  BLST-61-200903-07-0048-OTT

| | |
|---|---|
| **Charges for Damages to:** | AT&T SOUTHEAST (BELLSOUTH) FACILITIES |
| **Occurred/Discovered On or About:** | 03/09/2009 |
| **Approximate Location:** | 25 KING BOULEVARD, MCDONOUGH, GA |
| **How Damage Occurred:** | DIGGING TO REPLACE WATER METERS |

The following amounts include direct and indirect costs covering repair of this damage including but not limited to personnel, equipment and vehicles

| | |
|---|---|
| **LABOR COST:** | $449.58 |
| **MATERIALS/UNIT COST ITEMS:** | $88.22 |
| **CONTRACTOR:** | $105.26 |
| **LOSS OF USE:** | $183.00 |
| **OTHER:** | $0.00 |
| **TOTAL AMOUNT DUE:** | $826.06 |

**(**** PLEASE DO NOT PAY WITH TELEPHONE BILL ****)**
**Remit Payment to:**
**AT&T**
**909 Chestnut Street**
**Room 39-N-13**
**St. Louis, MO 63101-3099**
**** INQUIRIES 800-894-0374 or 800-363-3234 (FAX)**

Return this section with payment

**This payment is due upon receipt** If payment is not received within 30 days further collection action will be taken.  IF A PAYMENT FOR LESS THAN THE FULL AMOUNT IS RECEIVED, IT WILL BE APPLIED AS A PARTIAL PAYMENT.

If you are covered by insurance, please forward this to your carrier for payment  Once your claim has been established with your insurance company, please contact us at 800-894-0374 with your claim information. and we will work with your insurance company to resolve

AT&T accepts checks, money orders or credit card payments  We do not accept cash.  Please complete the information below and return to the address above or you may call 800-894-0374 to pay by phone.

Credit Card number: _____    Three digit security number on back of card: _____

Name on Card: _____    Expiration Date: ____/____/_____

Amount to be charged to your card: $_____    SIGNATURE: _____

**Claim #:  BLST-61-200903-07-0048-OTT**    (Please write claim number on check or money order to ensure proper credit)



# Bill For Damages

07038   100 - 007   452.75
1|30|08
Bruce Poty

handwritten notations

Billed To: BLYTHE DEVELOPEMENT
1415 E WESTINGHOUSE BLVD
CHARLOTTE, NC 28273

Date: 01/24/2008
Page 1 of 1
Claim #:  BLST-63-200711-33-0051-TYW

| | |
|---|---|
| Charges for Damages to: | AT&T SOUTHEAST (BELL SOUTH) FACILITIES |
| Occurred/Discovered On or About: | 11/07/2007 |
| Approximate Location: | INT. CALDWELL AND STONEWALL, CHARLOTTE, NC |
| How Damage Occurred: | DIGGING IN STREET |

| | |
|---|---|
| **LABOR COST (FDC*):** | $365.13 |

(*FDC reflects cost of repairs specific to this damage including personnel, equipment, vehicles and is in compliance with FCC established labor cost accounting requirements.)

| | |
|---|---|
| **MATERIALS:** | $66.12 |
| **CONTRACTOR:** | $0.00 |
| **LOSS OF USE:** | $21.50 |
| **OTHER:** | $0.00 |
| **TOTAL AMOUNT DUE:** | $452.75 |

(**** PLEASE DO NOT PAY WITH TELEPHONE BILL ****)
Remit Payment to:
AT&T
909 Chestnut Street
Room 39-N-13
St. Louis, MO 63101-3099
** INQUIRIES 800-894-0374 or 800-363-3234 (FAX)

Return this section with payment

This bill is due upon receipt. If payment is not received within 30 days further collection action will be taken.  IF A PAYMENT FOR LESS THAN THE FULL AMOUNT BILLED IS RECEIVED, IT WILL BE APPLIED AS A PARTIAL PAYMENT.

If you are covered by insurance, please forward this bill to your carrier for payment. Once your claim has been established with your insurance company, please contact us at 800-894-0374 with your claim information, and we will work with your insurance company to resolve.

AT&T accepts checks, money orders or credit card payments. We do not accept cash. Please complete the information below and return to the address above or you may call 800-894-0374 to pay by phone.

Credit Card number: _____     Three digit security number on back of card: _____

Name on Card: _____     Expiration Date: ____ / ___ / _____

Amount to be charged to your card: $_____ SIGNATURE: _____

Claim #:  BLST-63-200711-33-0051-TYW     (Please write claim number on check or money order to ensure proper credit.)

**Plaintiffs' Opposition to Defendants'
Motion to Strike Class Allegations**

# Exhibit 2

Survey of State Unjust Enrichment Standards

*James D. Hinson Electrical Contracting, Inc., et al. v. AT&T Services, Inc., et al.*
U.S. District Court, Middle District, Florida, Jacksonville Division
No. 3:13-cv-29-J-32JRK

**SURVEY OF STATE UNJUST ENRICHMENT STANDARDS**

| # | State | State Unjust Enrichment Standards |
|---|-------|-----------------------------------|
| 1 | Alabama | "To prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Scrushy v. Tucker*, 955 So.2d 988, 1011 (Ala. 2006) (citations and internal quotation marks omitted). |
| 2 | Alaska | "Under our law of unjust enrichment, [plaintiff], as the party seeking the credit, had the burden of showing that (1) he conferred a benefit upon [defendant]; (2) [defendant] appreciated the benefit; and (3) [defendant] accepted and retained the benefit under circumstances making it inequitable for her to retain the benefit without paying [plaintiff] the value thereof." *Bennett v. Artus*, 20 P.3d 560, 563 (Alaska 2001) (footnote omitted). |
| 3 | Arizona | "In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law." *Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995). |
| 4 | Arkansas | Unjust enrichment has been described by the Arkansas Supreme Court as an equitable doctrine or principle that "one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." *R.K. Enterprises, LLC v. Pro-Comp Management, Inc.*, 372 Ark. 199, __ S.W.3d __ (2008). |
| 5 | California | "[T]he elements for a claim of unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881, 883 (Cal. Ct. App. 2000) (citation omitted). |

| # | State | State Unjust Enrichment Standards |
|---|-------|----------------------------------|
| 6 | Colorado | "A plaintiff seeking to recover in equity for unjust enrichment must show that, at the plaintiff's expense, the defendant received a benefit under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Wilson v. Prentiss*, 140 P.3d 288, 292-93 (Colo. App. 2006). |
| 7 | Connecticut | "[Unjust enrichment's] three basic requirements are (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Eastern Metal Prods. v. DePerry*, 686 A.2d 1003, 1004 (Conn. App. Ct. 1997). |
| 8 | Delaware | "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999). |
| 9 | District of Columbia | "To recover on a theory of unjust enrichment, . . . the plaintiff 'must show that the defendant was unjustly enriched at his expense and that the circumstances were such that in good conscience the defendant should make restitution.'" *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 175 (D.C. 1996). |
| 10 | Florida | "To state a cause of action for unjust enrichment, a plaintiff must allege facts that, if taken as true, would show 1) that a benefit was conferred upon the defendant, 2) that the defendant either requested the benefit or knowingly and voluntarily accepted it, 3) that a benefit flowed to the defendant, and 4) that under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof." *Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 303 (Fla. Dist. Ct. App. 1999). |

| #  | State    | State Unjust Enrichment Standards |
|----|----------|-----------------------------------|
| 11 | Georgia  | "The theory of recovery for unjust enrichment arises both at law and equity. . . . The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred.  Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit." *Reidling v. Holcomb*, 483 S.E.2d 624, 626 (Ga. Ct. App. 1997). |
| 12 | Hawaii   | "It is a truism that '[a] person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, . . . or in any way adds to the other's security or advantage.'  One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust.  And it is axiomatic that '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'  We realize unjust enrichment is a broad and imprecise term defying definition.  But in deciding whether there should be restitution here, we are guided by the underlying conception of restitution, the prevention of injustice." *Small v. Badenhop*, 701 P.2d 647, 654 (Haw. 1985). |
| 13 | Idaho    | "A prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Vanderford Co., Inc. v. Knudson*, 165 P.3d 261, 272 (Idaho 2007). |
| 14 | Illinois | "To state a cause of action based upon a theory of unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience." *B&B Land Acquisition, Inc. v. Mandell*, 714 N.E.2d 58, 63 (Ill. App. Ct. 1999). |

| # | State | State Unjust Enrichment Standards |
|---|-------|----------------------------------|
| 15 | Indiana | "To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Pond v. McNellis*, 845 N.E.2d 1043, 1056-57 (Ind. App. 2006) (citation omitted). |
| 16 | Iowa | "Recovery based on unjust enrichment can be distilled into three basic elements of recovery. They are: (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *State, Dept. of Human Services ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-55 (Iowa 2001) (footnotes omitted). |
| 17 | Kansas | "To prevail on a claim of unjust enrichment, there must be: '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payments of its value.'" *Home Bank & Trust Co. v. Cedar Bluff Cattle Feeders, Inc.*, 959 P.2d 934, 939 (Kan. Ct. App. 1998). |
| 18 | Kentucky | "[A] claimant shall be required to prove three elements in each case [of unjust enrichment]. First, a benefit must be conferred upon the defendant at the plaintiff's expense. Second, the benefit must result in an appreciation by the defendant. Finally, acceptance of the benefit under circumstances which render its retention, by the defendant without payment of the value thereof, inequitable." *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987). |
| 19 | Louisiana | La. Civ.Code art. 2298 and court decisions establish five requirements for proving unjust enrichment, as follows: "(1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of 'justification' or 'cause' for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff." *Industrial Companies, Inc. v. Durbin*, 837 So.2d 1207, 1213-14 (La. 2003) (citation omitted). |

| # | State | State Unjust Enrichment Standards |
|---|---|---|
| 20 | Maine | "To decide an unjust enrichment claim, a court must ascertain whether a benefit has been conferred, whether the party receiving the benefit has an appreciation or knowledge of it, and whether 'the acceptance or retention by the defendant of the benefit is under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Landry v. Landry*, 697 A.2d 843, 845 (Me. 1997). |
| 21 | Maryland | "The elements of a claim of unjust enrichment are: 1. a benefit conferred upon the defendant by the plaintiff; 2. an appreciation or knowledge by the defendant of the benefit; 3. the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Klein v. Fidelity & Deposit Co. of Am.*, 700 A.2d 262, 277 (Md. Ct. Spec. App. 1997). |
| 22 | Massachusetts | "Unjust enrichment is an essentially equitable doctrine requiring proof of some misconduct, fault or culpable action on the part of the defendant as 'wrongdoer' which renders his retention of a benefit at the expense of another contrary to equity and good conscience." *DeSanctis v. Labell's Airport Parking, Inc.*, 1991 Mass. App. Div. 37, 40 (Mass. Dist. Ct. 1991). |
| 23 | Michigan | "[I]n order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195, 729 N.W.2d 898, 904 (2006) (citation omitted). |
| 24 | Minnesota | "In order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001) (citation omitted). |

| #  | State | State Unjust Enrichment Standards |
|----|-------|-----------------------------------|
| 25 | Mississippi | "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong." *Kersey v. Fernald*, 911 So.2d 994, 997 (Miss. App. 2005) (quoting *Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995)). |
| 26 | Missouri | "The elements of unjust enrichment are: [1] a benefit conferred by a plaintiff on a defendant; [2] the defendant's appreciation of the fact of the benefit; and [3] the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable." *Howard v. Turnbull*, __ S.W.3d __, 2008 WL 2491780, at *2 (Mo. App. W.D. June 24, 2008) (citation and internal quotation marks omitted). |
| 27 | Montana | "In establishing a prima facie case under the equitable doctrine of unjust enrichment, the plaintiff must show misconduct or fault on the part of the defendant, or that the defendant somehow took advantage of the plaintiff." *Buday v. Phillips*, 8 P.3d 123 (Mont. 2000) (table). |
| 28 | Nebraska | "[U]njust enrichment is 'a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated where it is just and equitable that such restitution be made.'" *Ahrens v. Dye*, 302 N.W.2d 682, 684 (Neb. 1981). "The issue of unjust enrichment is a question of fact. Where benefits have been received and retained under circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the recipient to pay the reasonable value of the services." *Sorenson v. Dager*, 601 N.W.2d 564, 566 (Neb. Ct. App. 1999). |
| 29 | Nevada | "This court has observed that the essential elements of unjust enrichment are [1] a benefit conferred on the defendant by the plaintiff, [2] appreciation by the defendant of such benefit, and [3] acceptance and retention by the defendant of such benefit." *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (citation and internal quotation marks omitted). |

| # | State | State Unjust Enrichment Standards |
|---|-------|-----------------------------------|
| 30 | New Hampshire | "'A trial court may require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable for him to retain.' 'To entitle one to restitution, it must be shown that there was unjust enrichment either through wrongful acts or passive acceptance of a benefit that would be unconscionable to retain.'" *Kowalski v. Cedars of Portsmouth Condo. Ass'n*, 769 A.2d 344, 347 (N.H. 2001). |
| 31 | New Jersey | "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Cameco, Inc. v. Gedicke*, 690 A.2d 1051, 1059 (N.J. Super. Ct. App. Div. 1997). |
| 32 | New Mexico | "Unjust enrichment exists when one party knowingly benefits at another's expense and allowing that party to retain the benefit would be unjust." *Romero v. Bank of the Southwest*, 83 P.3d 288, 296 (N.M. App. 2003) (citation omitted). "Typically, where the defendant has received money from plaintiff, the amount of restitution owed is equal to the amount of money paid." *Id.* (citations omitted). |
| 33 | New York | "A person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust. A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties. It is a conclusion reached through the application of principles of equity." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123 (N.Y. 1976). |
| 34 | North Carolina | "In order to [survive challenge to unjust enrichment claim], plaintiff was required to present evidence that a benefit was conferred upon [defendant], that he 'consciously accepted' that benefit, and that the benefit was not gratuitous." *Norman Owen Trucking, Inc. v. Morkoski*, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998). |

| # | State | State Unjust Enrichment Standards |
|---|-------|----------------------------------|
| 35 | North Dakota | "Five elements must be established to prove unjust enrichment: 1. An enrichment;  2. An impoverishment;  3. A connection between the enrichment and the impoverishment;  4. Absence of a justification for the enrichment and impoverishment; and  5. An absence of a remedy provided by law." *Schroeder v. Buchholz*, 622 N.W.2d 202, 207 (N.D. 2001). |
| 36 | Ohio | "[T]his court identified three elements necessary to succeed in an action based on a quasi-contract: (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Dixon v. Smith*, 695 N.E.2d 284, 290 (Ohio Ct. App. 1997) (citation omitted). |
| 37 | Oklahoma | "The term 'unjust enrichment' describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable.  It is a recognized ground for recovery in Oklahoma.  A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. App. 2000) (quoting *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Ct. App. 1996)). |
| 38 | Oregon | "[T]he elements of the quasi-contractual claim of unjust enrichment are [1] a benefit conferred, [2] awareness by the recipient that a benefit has been received and, [3] under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Summer Oaks Ltd. Partnership v. McGinley*, 55 P.3d 1100, 1104 (Or. App. 2002) (citation and internal quotation marks omitted). |
| 39 | Pennsylvania | "Unjust enrichment is a quasi-contractual doctrine based in equity; its elements include 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Wiernik v. PHH US Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999). |

| # | State | State Unjust Enrichment Standards |
|---|-------|-----------------------------------|
| 40 | Rhode Island | "'In order to recover under quasi-contract for unjust enrichment, a plaintiff must prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof.'" *Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997). |
| 41 | South Carolina | "This Court has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment. Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it inequitable for him to retain it without paying its value." *Columbia Wholesale Co. v. Scudder May N.V.*, 440 S.E.2d 129, 130 (S.C. 1994). |
| 42 | South Dakota | "[Plaintiff] must show she conferred a benefit upon [defendant], that the [defendant] was cognizant of that benefit and that to allow the [defendant] to retain that benefit would unjustly enrich it." *Bollinger v. Eldredge*, 524 N.W.2d 118, 123 (S.D. 1994). |
| 43 | Tennessee | "The elements of an unjust enrichment claim are: 1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006) (internal quotation marks omitted; quoting *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)). |

| # | State | State Unjust Enrichment Standards |
|---|-------|----------------------------------|
| 44 | Texas | "Unjust enrichment is based on the equitable principle that one who receives benefits unjustly should make restitution for those benefits. To be entitled to restitution under a theory of unjust enrichment, the plaintiff must show the party sought to be charged had wrongfully secured a benefit or had passively received one which would be unconscionable for that party to retain.  The taking of an undue advantage does not necessarily encompass the element of reliance." *Southwestern Bell Telephone Co. v. Marketing on Hold, Inc.*, 170 S.W.3d 814, 827-28 (Tex. App. 2005) (emphasis in original; citations omitted). |
| 45 | Utah | "In order to prevail on a claim for unjust enrichment, three elements must be met.  First, there must be a benefit conferred on one person by another.  Second, the conferee must accept or have knowledge of the benefit.  Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000). |
| 46 | Vermont | "The standard to be used in deciding a claim for unjust enrichment is 'whether [defendant] received a benefit for which plaintiff should be compensated.'" *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994, 995 (Vt. 1987). |
| 47 | Virginia | "The requirements for relief under the doctrine of unjust enrichment are as follows: (1) One party has conferred a benefit by rendering services or expending properties on the other; (2) This person has a reasonable expectation of being compensated; (3) The benefits were conferred at the express or implied request of the person receiving them; and, (4) If the defendant is allowed to retain the benefits without compensating the plaintiff, he would be unjustly enriched." *Primrose Dev. Corp. v. Benchmark Acquisition Fund I L.P.*, 47 Va. Cir. 296, 298 (Loudon 1998). |
| 48 | Washington | "Unjust enrichment has three elements: (1) There must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value." *Pierce County v. State*, __ P.3d __, 2008 WL 2223877, at *21 (Wash. App. May 28, 2008) (citation omitted). |

| # | State | State Unjust Enrichment Standards |
|---|-------|----------------------------------|
| 49 | West Virginia | "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Dunlap v. Hinkle*, 317 S.E.2d 508, 512 n.2 (W. Va. 1984). |
| 50 | Wisconsin | "An unjust enrichment action requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." *Ulrich v. Zemke*, 654 N.W.2d 458, 462 (Wis. App. 2002) (citation and internal quotation marks omitted). |
| 51 | Wyoming | "One seeking damages based on unjust enrichment must prove four elements: (1) Valuable services were rendered, or materials furnished, (2) to the party to be charged, (3) which services or materials were accepted, used and enjoyed by the party, and, (4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged. Without such payment, the party would be unjustly enriched." *Bowles v. Sunrise Home Center, Inc.*, 847 P.2d 1002, 1004 (Wyo. 1993) (citation omitted). |

**Plaintiffs' Opposition to Defendants'
Motion to Strike Class Allegations**

# Exhibit 3

Chart on American Rule Application in Each State

*James D. Hinson Electrical Contracting, Inc., et al. v. AT&T Services, Inc., et al.*
U.S. District Court, Middle District, Florida, Jacksonville Division
No. 3:13-cv-29-J-32JRK

**THE AMERICAN RULE:  A FIFTY STATE (AND WASHINGTON, D.C.) SURVEY**

| STATE | RULE AND APPLICABLE CASES |
|-------|---------------------------|
| AL | **Alabama has adopted the American Rule.** *Ex parte Horn*, 718 So. 2d 694, 702 (Ala. 1998); *Ocean Reef Developers II, LLC v. Maddox*, 2012 Ala. Civ. App. LEXIS 125 (Ala. Civ. App. May 18, 2012) |
| AK | **Alaska rejects the American rule for attorney's fees.** Instead, Alaska's Civil Rule 82 provides for partial fee-shifting in most civil cases absent any agreement between contracting parties for "services performed up to the time of the judgment." O'Connell v. Will, 263 P.3d 41, 47 (Alaska 2011) |
| AZ | **Arizona has adopted the American Rule but with some exceptions.** *Steinfeld v. Zeckendorf*, 15 Ariz. 335, 138 P. 1044 (1914), aff'd, 239 U.S. 26, 36 S.Ct. 14, 60 L.Ed. 125 (1915). |
| AR | **Arizona has adopted the American Rule.** *Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (Ark. 2006); *Crockett v. C.A.G. Invs., Inc.*, 2011 Ark. 208, 12 (Ark. 2011) |
| CA | **California has adopted the American Rule.** Code of Civil Procedure § 1021; *Gray v. Don Miller & Associates, Inc.*, 35 Cal.3d 498, 504, 198 Cal. Rptr. 551, 674 P.2d 253 (Cal. 1984); *Musaelian v. Adams*, 45 Cal. 4th 512, 516 (Cal. 2009) |
| CO | **Colorado has adopted the American Rule.** *Rocky Mt. Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1072 (Colo. 2010); *Beebe v. Pierce*, 185 Colo. 34, 521 P.2d 1263 (Colo. 1974); *Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1300 (Colo. 1986) |
| CT | **Connecticut has adopted the American Rule.** *Town of Stratford v. Castater*, 136 Conn. App. 535, 539 (Conn. App. Ct. 2012) |
| DE | **Delaware has adopted the American Rule.** *William Penn P'ship v. Saliba*, 13 A.3d 749, 758 (Del. 2011); *Cantor Fitzgerald, LP. v. Cantor*, 2001 Del. Ch. LEXIS 70, 2001 WL 536911, at \*4 (Del. Ch. May 11, 2001). *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1998). |
| DC | **Washington, D.C. has adopted the American Rule.** *6921 Georgia Ave., N.W., Ltd. P'ship v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 971 (D.C. 2008); *Wolfe v. Khawam*, 2012 D.C. Super. LEXIS 5 (D.C. Super. Ct. 2012) |
| FL | **Florida has adopted the American Rule.** *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 832 (Fla. 1993); *Reiterer v. Montiel*, 2012 Fla. App. LEXIS 3680 (Fla. Dist. Ct. App. 2d Dist. Mar. 7, 2012) |
| GA | **Georgia has adopted the American Rule.** *Ward v. Ward*, 289 Ga. 250, 251, 710 SE2d 555 (2011); *Woods v. Hall*, 315 Ga. App. 93, 97 (Ga. Ct. App. 2012) |
| HI | **Hawaii has adopted the American Rule.** *Sierra Club v. Dep't of Transp. of State of Hawai'i*, 120 Hawai'i 181, 218, 202 P.3d 1226, 1263 (Haw. 2009); *County of Hawai'i v. C&J Coupe Family, Ltd. P'ship*, 124 Haw. 281, 306 (Haw. 2010) |
| ID | **Idaho has adopted the American Rule.** *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 447-48, 235 P.3d 387, 397-98 (Idaho 2010); *Sopatyk v. Lemhi County*, 151 Idaho 809, 819 (Idaho 2011) |
| IL | **Illinois has adopted the American Rule.** *Sandholm v. Kuecker*, 962 N.E.2d 418, 435 (Ill. 2012); *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572, 739 N.E.2d 1263, 251 Ill. Dec. 141 (Ill. 2000) |
| IN | **Indiana has adopted the American Rule.** *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009); *Neu v. Gibson*, 968 |

**THE AMERICAN RULE:  A FIFTY STATE (AND WASHINGTON, D.C.) SURVEY**

| | |
|---|---|
| | N.E.2d 262, 278 (Ind. Ct. App. 2012) |
| IA | **Iowa has adopted the American Rule.** *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012); *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010) |
| KS | **Kansas has adopted the American Rule.** *Farm Bureau Mut. Ins. Co. v. Kurtenbach*, 265 Kan. 465, 479-80, 961 P.2d 53 (Kan. 1998); *Robinson v. City of Wichita Emples. Ret. Bd. of Trs.*, 291 Kan. 266, 279 (Kan. 2010) |
| KY | **Kentucky has adopted the American Rule.** *Lyon v. Whitsell*, 245 S.W.2d 926 (Ky. 1952); *Gibson v. Kentucky Farm Bureau Mutual Ins. Co.*, 328 S.W.3d 195, 204 (Ky. Ct. App. 2010); *Louisville Mall Assocs., LP v. Wood Ctr. Props., LLC*, 361 S.W.3d 323, 336 (Ky. Ct. App. 2012) |
| LA | **Louisiana has adopted the American Rule.** *Smith v. State, Dept. of Transp. & Development*, 899 So.2d 516, 525 (La. 2005); *Zurich Am. Ins. Co. v. Queen's Mach. Co.*, 2009 La. App. LEXIS 2302 (La.App. 5 Cir. Jan. 27, 2009) |
| ME | **Maine has adopted the American Rule.** *Linscott v. Foy*, 716 A.2d 1017, 1021 (Me. 1998); *Cimenian v. Lumb*, 2008 ME 107, P11 (Me. 2008) |
| MD | **Maryland has adopted the American Rule.** *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434, 437 (Md. 2005); *Davis v. Petito*, 425 Md. 191, 200 (Md. 2012) |
| MA | **Massachusetts has adopted the American Rule.** *Charley Noble, LLC v. Elaine Corp.*, 29 Mass. L. Rep. 503 (Mass. Super. Ct. 2012) |
| MI | **Michigan has adopted the American Rule.** *Matras v Amoco Oil Co*, 424 Mich. 675, 695; 385 N.W.2d 586 (Mich. 1986); *In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson*, 406 Mich. 497, 503; 280 N.W.2d 457 (Mich. 1979); *Popma v. Auto Club Ins. Ass'n*, 446 Mich. 460, 474 (Mich. 1994) |
| MN | **Minnesota has adopted the American Rule.** *Osborne v. Chapman*, 574 N.W.2d 64, 68 (Minn. 1998); *Minn Comm Util. Constr. Co. v. Yaggy Colby Assocs.*, 2012 Minn. App. Unpub. LEXIS 356 (Minn. Ct. App. Apr. 30, 2012) |
| MS | **Mississippi has adopted the American Rule.** *T. Jackson Lyons & Assocs., P. A. v. Precious T. Martin, Sr. & Assocs., PLLC*, 87 So. 3d 444, 452 (Miss. 2012) |
| MO | **Missouri has adopted the American Rule.** *Hinton v. Director of Revenue*, 21 S.W.3d 109, 112 (Mo. Ct. App. 2000); *Goines v. Mo. Dep't of Soc. Servs.*, 364 S.W.3d 684, 688 (Mo. Ct. App. 2012) |
| MT | **Montana has adopted the American Rule.** *Tanner v. Dream Island, Inc.*, 275 Mont. 414, 429, 913 P.2d 641, 650 (Mont. 1996); *DeVoe v. City of Missoula*, 2012 MT 72, P25 (Mont. 2012) |
| NE | **Nebraska has adopted the American Rule.** *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 767, 336 N.W.2d 312, 315 (Neb. 1983); *Stewart v. Bennett*, 273 Neb. 17, 22 (Neb. 2007) |
| NV | **Nevada has adopted the American Rule.** *U.S. Design & Constr. v. I.B.E.W. Local 357*, 118 Nev. 458, 462, 50 P.3d 170, 173 (Nev. 2002); *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012) |
| NH | **New Hampshire has adopted the American Rule.** *Merrimack School Dist. v. Nat'l School Bus Serv.*, 140 N.H. 9, 14, 661 A.2d 1197 (N.H. 1995); *In re Guardianship of Eaton*, 163 N.H. 386, 389 (N.H. 2012) |

## THE AMERICAN RULE: A FIFTY STATE (AND WASHINGTON, D.C.) SURVEY

| | |
|---|---|
| NJ | **New Jersey has adopted the American Rule.** *Rendine v. Pantzer*, 141 N.J. 292, 661 A.2d 1202 (N.J. 1995); *Grow Co., Inc. v. Chokshi*, 424 N.J. Super. 357, 366 (N.J. Ct. App. 2012) |
| NM | **New Mexico has adopted the American Rule.** *New Mexico Right to Choose/NARAL v. Johnson*, 127 N.M. 654, 986 P.2d 450 (N.M. 1999); *Schroeder v. Mem'l Med. Ctr.*, 123 N.M. 719, 945 P.2d 449 (N.M. 1997). |
| NY | **New York has adopted the American Rule.** *U.S. Underwriters Ins. Co. v City Club Hotel, LLC*, 3 NY3d 592, 597, 822 N.E.2d 777, 789 N.Y.S.2d 470 (N.Y. 2004); *Gotham Partners, L.P. v High River Ltd. Partnership*, 76 AD3d 203, 906 N.Y.S.2d 205 (1st Dept 2010); *White v The City of New York*, 2012 N.Y. Misc. LEXIS 2543 (N.Y. Sup. Ct. May 22, 2012) |
| NC | **North Carolina has adopted the American Rule.** *Davis v. Kelly*, 147 N.C. App. 102, 105, 554 S.E.2d 402, 404 (N.C. 2001); *Town of Forest City v. Rutherford R.R. Dev. Corp.*, 727 S.E.2d 26 (N.C. Ct. App. 2012) |
| ND | **North Dakota has adopted the American Rule.** *Matter of Estate of Murphy*, 554 N.W.2d 432, 440-41 (N.D. 1996); *City of Fargo v. Malme*, 2008 ND 172, P5 (N.D. 2008) |
| OH | **Ohio has adopted the American Rule.** *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009 Ohio 306, 906 N.E.2d 396 (Ohio 2009); *Kime Design, LLC v. Aouthmany*, 2012 Ohio 3183 (Ohio Ct. App., July 13, 2012) |
| OK | **Oklahoma has adopted the American Rule.** *Griffin v. Bredouw*, 420 P.2d 546 (Ok. 1966); *Eagle Bluff, L.L.C. v. Taylor*, 2010 OK 47, P15 (Okla. 2010) |
| OR | **Oregon has adopted the American Rule.** *Deras v. Meyers*, 272 Or 47, 65, 535 P2d 541 (Or. 1975); *Mattiza v. Foster*, 311 Ore. 1, 4 (Or. 1990) |
| PA | **Pennsylvania has adopted the American Rule.** *Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 976 A.2d 474, 482-83 (Pa. 2009); *Sayler v. Skutches*, 2012 PA Super 23 (Pa. Super. Ct. 2012) |
| RI | **Rhode Island has adopted the American Rule.** *Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007); *Bronowiski v. Bridges*, 44 A.3d 116, 122 (R.I. 2012) |
| SC | **South Carolina has adopted the American Rule.** *Jackson v. Speed*, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (S.C. 1997); *Wachovia Bank N.A. v. Beane*, 397 S.C. 612 (S.C. Ct. App. 2012) |
| SD | **South Dakota has adopted the American Rule.** *Tracy v. T & B Const. Co.*, 85 S.D. 337, 340 (S.D. 1970) |
| TN | **Tennessee has adopted the American Rule.** *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *Brewster v. Galloway*, 2012 Tenn. App. LEXIS 458 (Tenn. Ct. App. July 11, 2012) |
| TX | **Texas has adopted the American Rule.** *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011); *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 577 (Tex. 2012) |
| UT | **Utah has adopted the American Rule.** *Utahans for Better Dental Health-Davis, Inc. v. Rawlings*, 175 P.3d 1036 (Utah 2007); *Hughes v. Cafferty*, 89 P.3d 148 (Utah 2004); *Neff v. Neff*, 2011 UT 6 (Utah 2011) |
| VT | **Vermont has adopted the American Rule.** *Windsor School Dist. v. State*, 183 Vt. 452, 956 A.2d 528 (Vt. 2008); *Concord Gen. Mut. Ins. Co. v. Woods*, 175 Vt. 212, 220, 824 A.2d 572, 579 (Vt. 2003); *Knappmiller v. Bove*, 2012 VT 38, P4 (Vt. 2012) |

### THE AMERICAN RULE:  A FIFTY STATE (AND WASHINGTON, D.C.) SURVEY

| | |
|---|---|
| VA | **Virginia has adopted the American Rule.**  *Piney Meeting House Invs., Inc. v. Hart*, 284 Va. 187, 196 (Va. 2012); |
| WA | **Washington has adopted the American Rule.**  *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 797-98, 557 P.2d 342 (Wash. 1976); *Greenbank Beach & Boat Club, Inc. v. Bunney*, 2012 Wash. App. LEXIS 1224 (Wash. Ct. App. May 29, 2012) |
| WV | **West Virginia has adopted the American Rule.**  *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 365 S.E.2d 246 (W. Va. 1986); *In re John T.*, 225 W. Va. 639, 642-643 (W. Va. 2010) |
| WI | **Wisconsin follows the American Rule but does recognize an exception not applicable here**.  *Meas v. Young*, 142 Wis. 2d 95, 101, 417 N.W.2d 55 (Wis. Ct. App. 1987); *Estate of Kriefall v. Sizzler United States Franchise, Inc.*, 2012 WI 70, P72 (Wis. 2012) |
| WY | **Wyoming has adopted the American Rule.**  *Thorkildsen v. Belden*, 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo. 2012); *Dave v. Valdez*, 2012 WY 59, P6 (Wyo. 2012) |

**Plaintiffs' Opposition to Defendants'**
**Motion to Strike Class Allegations**

# Exhibit 4

One Call Laws Chart on Damages Provisions

*James D. Hinson Electrical Contracting, Inc., et al. v. AT&T Services, Inc., et al.*
U.S. District Court, Middle District, Florida, Jacksonville Division
No. 3:13-cv-29-J-32JRK

**ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:**
**A FIFTY STATE (AND WASHINGTON D.C.) SURVEY**

| STATE | RECOVERY ALLOWED |
|---|---|
| AL | The Alabama statute has no civil liability provision. The statute provides for a fine not to exceed $10,000 but this fine does not affect the imposition of civil remedies for property damage. Code of Ala. § 37-15-10 |
| AK | The Alaska statute has no civil liability provision. The statute provides for a fine of between $50 and $1,000 but this fine does not affect the imposition of civil remedies for property damage. Alaska Stat. § 42.30.440 |
| AZ | According to the Arizona statute: <br> "If any underground facility is damaged by any person in violation of this article as a result of failing to obtain information as to its location, failing to take measures for protection of the facilities or failing to excavate in a careful and prudent manner, the person is liable to the owner of the underground facility for the total cost of the repair of the facility." A.R.S. § 40-360.26 <br> Also, "the prevailing party in an action brought to impose liability under any section of this article or to have any act or omission stopped and prevented, either by mandamus or injunction, pursuant to section 40-360.25 is entitled to recover reasonable attorney fees. In addition, if the prevailing party is a one-call notification center, that party is entitled to recover reasonable administrative costs and expenses." A.R.S. § 40-360.27 <br> "If a violation of this article results in damage to an underground facility, the violator is liable to all affected underground facilities operators and excavators for all resulting damages proximately caused by the violations, including economic loss." <br> A.R.S. § 40-360.28 |
| AR | The Arkansas statute has no civil damages provision. The statute provides for a fine not to exceed $2,500 for each offense but this fine "does not affect any civil remedies for personal injury or property damage, including underground facilities, except as otherwise specifically provided for in this chapter." A.C.A. § 14-271-104 |
| CA | According to the California statute, <br> "If a subsurface installation is damaged by an excavator as a result of failing to comply with Section 4216.2 or 4216.4, or as a result of failing to comply with the operator's requests to protect the subsurface installation as specified by the operator prior to the start of excavation, the excavator shall be liable to the operator of the subsurface installation for resulting damages, costs, and expenses to the extent the damages, costs, and expenses were proximately caused by the excavator's failure to comply. <br> Nothing in this section shall be construed to do any of the following: <br> (1) Affect claims including, but not limited to, third-party claims brought against the excavator or operator by other parties for damages arising from the excavation. <br> (2) Exempt the excavator or operator from his or her duty to mitigate any damages as required by common or other applicable law. <br> (3) Exempt the excavator or operator from liability to each other or third parties based on equitable indemnity or |

**ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:**
**A FIFTY STATE (AND WASHINGTON D.C.) SURVEY**

| | |
|---|---|
| | comparative or contributory negligence."  Cal Gov Code § 4216.7 <br><br> Additionally, the California Public Utility Code provides that "the measure of damages to the facility or equipment injured or destroyed shall be the cost to repair or replace the property injured or destroyed including direct and allocated costs for labor, materials, supervision, supplies, tools, taxes, transportation, administrative and general expense and other indirect or overhead expenses, less credit, if any, for salvage, as determined by such telegraph, telephone, electrical or gas corporations in conformity with a system of accounts established by the commission. The specifying of the measure of damages for the facility or equipment shall not preclude the recovery of such other damages occasioned thereby as may be authorized by law."  Cal Pub Util Code § 7952 |
| CO | According to the Colorado statute: <br> An action to recover a civil penalty under this section may be brought by an owner or operator, excavator, aggrieved party, district attorney, or the attorney general. Venue for such an action shall be proper in the district court for the county in which the owner or operator, excavator, or aggrieved party resides or maintains a principal place of business in this state or in the county in which the conduct giving rise to a civil penalty occurred. <br> (b) Any civil penalty imposed pursuant to this section, including reasonable attorney fees, shall be paid to the prevailing party. <br> (c) The penalties provided in this article are in addition to any other remedy at law or equity available to an excavator or to the owner or operator of a damaged underground facility.  C.R.S. 9-1.5-104.5 |
| CT | The Connecticut statute has an extensive list of various fines to be imposed for violations of the statute and criteria for such imposition.  It is silent though on liability for damages.  Regs., Conn. State Agencies § 16-345-9 |
| DE | The Delaware statute provides for civil fines of between $100 and $1000 for each offense.  The provision on remedies is silent as to civil liability and the measure of damages. |
| DC | According to the DC statute, in addition to fines ranging from $2500 to $5000: <br> "If any underground facility is damaged through the fault of any person, that person shall be liable to the owner of the underground facility for the total cost of the repair or, if necessary, the replacement of the damaged underground facility. If any underground facility is damaged by any person carrying out excavation or demolition without having complied with the notice provisions of this chapter, that person shall be liable to the owner of the underground facility for treble the cost of the repair or replacement of the damaged underground facility."  D.C. Code § 34-2707 |
| FL | According to the Florida statute, if a person violates the statute "and subsequently, whether by himself or herself or through the person's employees, contractors, subcontractors, or agents, performs an excavation or demolition that damages an underground facility of a member operator, it is rebuttably presumed that the person was negligent. The person, if found liable, is liable for the total sum of the losses to all member operators involved as those costs are normally computed. Any damage for loss of revenue and loss of use may not exceed $ 500,000 per affected underground facility, except that |

**ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:**
**A FIFTY STATE (AND WASHINGTON D.C.) SURVEY**

| | |
|---|---|
| | revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited.<br>If any excavator fails to discharge a duty imposed by this chapter, the excavator, if found liable, is liable for the total sum of the losses to all parties involved as those costs are normally computed. Any damage for loss of revenue and loss of use may not exceed $ 500,000 per affected underground facility, except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited."<br>Fla. Stat. § 556.106 |
| GA | The Georgia statute provides that damagers "shall be strictly liable for: (1) All costs incurred by the facility owner or operator in repairing or replacing its damaged facilities; and (2) Any injury or damage to persons or property resulting from damaging the utility facilities and sewer laterals.  O.C.G.A. § 25-9-13.  The statute also provides that costs of repairing or replacing the damaged facilities "shall be calculated utilizing generally accepted accounting principles."<br>O.C.G.A. § 25-9-13 |
| HI | The Hawaii statute does provide that "in addition to civil penalties imposed, the nonprevailing party shall reimburse the prevailing party for legal fees and costs incurred by the prevailing party."  HRS § 269E-14.  Arguably, this would only apply where a cable owner is forced to bring suit against an excavator.  However, as set forth in Plaintiffs' brief, to the extent that the statue may allow for the collection of claims processing charges, Plaintiffs are willing to exclude Hawaii from the Class States. |
| ID | The Idaho statute provides for civil penalties and fines from $1000 to $5000.  Nothing in the statute "eliminates, alters or otherwise impairs common law, statutory or other preexisting rights and duties of persons affected by the provisions of this chapter; nor does anything in this chapter, unless expressly so provided, eliminate, alter or otherwise impair other remedies, state or federal, including those at common law, of an underground facility owner whose facility is damaged; nor do the provisions of this chapter affect any civil remedies for personal injury or property damage except as expressly provided for herein."  Idaho Code § 55-2209<br>Also, "if an underground facility is damaged as a result of an excavator's failure to provide notice pursuant to section 55-2203(1)(c), Idaho Code, unless otherwise exempt, the excavator shall receive a written warning from the underground facility owner and shall be liable for actual costs of repairing the facility if it is the excavator's first failure to provide the notice required pursuant to section 55-2203(1)(c), Idaho Code, during any consecutive period of twelve (12) months."<br>Idaho Code § 55-2209 |
| IL | The Illinois statute includes an extensive chapter on fines, the amounts of fines and criteria for the imposition of fines.  According to this provision, the excavator "shall be subject to a penalty of up to $ 5,000 for each separate offense and shall be liable for the damage caused to the owners or operators of the facility."  Furthermore, according to the statute, "nothing in this Act shall be deemed to affect or determine the financial responsibility for any operation under this Act or liability of any person for any damages that occur unless specifically stated otherwise."  220 ILCS 50/8 |

**ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:**
**A FIFTY STATE (AND WASHINGTON D.C.) SURVEY**

| | |
|---|---|
| IN | According to the Indiana statute, "If an operator suffers a pecuniary loss as a result of a violation of this chapter, the operator may bring a civil action against the person who caused the loss for the following:<br>　(1) An amount equal to the operator's actual damage to the facility.<br>　(2) The costs of the action.<br>　(3) A reasonable attorney's fee.<br>(b) At the court's discretion, a court having jurisdiction may award punitive damages up to three (3) times the operator's actual damage." Burns Ind. Code Ann. § 8-1-26-22 |
| IA | The Iowa statute provides only for a fine of $1000 per day that the damage continues.  There is no provision for any additional civil remedies and, in fact, unlike the other statutes the civil remedy provision here does not say that the imposition of fines does not affect other common law remedies. Iowa Code § 480.6 |
| KS | The Kansas statute is generally silent on liability beyond civil fines.  It does include the following provision:  "In a civil action in a court of this state when it is shown by competent evidence that personal injury, death or other damages, including damage to any underground facilities, occurred as a result of a violation of this act, there shall be a rebuttable presumption of negligence on the part of the violator."  K.S.A. § 66-1811<br>It also includes a provision setting out the fines but, unlike the other statutes the civil remedy provision here does not say that the imposition of fines does not affect other common law remedies.  K.S.A. § 66-1811 |
| KY | The Kentucky statute provides only for a fine of $250 to $3000.  There is no provision for any additional civil remedies and, in fact, unlike the other statutes the civil remedy provision here does not say that the imposition of fines does not affect other common law remedies.  KRS § 367.4917 |
| LA | According to the Louisiana statute, "should an owner or operator file suit against an excavator or demolisher for damages to underground facilities or utilities and the court finds in favor of the owner or operator, in addition to damages provided for by this Part, the owner or operator shall be entitled to recover reasonable attorney fees and costs. If the court finds in favor of the excavator or demolisher, the excavator or demolisher shall be entitled to recover reasonable attorney fees and costs." La. R.S. 40:1749.14.  Arguably, this statute would only apply where a cable owner is forced to bring suit against a damager.  Moreover, to the extent that the damager established that he was not liable for the charges, the owner would be liable for the damager's attorneys' fees.  However, as set forth in Plaintiffs' brief, to the extent that the statue may allow for the collection of claims processing charges, Plaintiffs are willing to exclude Louisiana from the Class States. |
| ME | According to the Maine statute, "the owner or operator of an underground facility may request that the Public Utilities Commission issue a cease and desist order to prevent a person from undertaking an excavation that may result in damage to the underground facility. The Public Utilities Commission may issue a cease and desist order if the commission determines that the excavation or proposed excavation: A. Is being conducted or is likely to be conducted in a negligent or unsafe manner; and B. Is causing or is likely to cause damage to the underground facility.  If the owner or operator prevails in an action brought pursuant to this subsection, the owner or operator is entitled to an award of the costs of bringing the |

### ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:
### A FIFTY STATE (AND WASHINGTON D.C.) SURVEY

| | |
|---|---|
| | action, including reasonable attorney's fees.  23 M.R.S. § 3360-A.  The provision for attorneys' fees then would seem to apply only to those instances when the owner sought and received a cease and desist order to prevent the damager from causing damage to the underground facility.  However, as set forth in Plaintiffs' brief, to the extent that the statue may allow for the collection of claims processing charges, Plaintiffs are willing to exclude Maine from the Class States. |
| MD | Maryland's statute includes a provision setting out fines from $2000 to $4000.   This section then includes a provision for civil remedies.  Interestingly, this provision only applies if the Authority does not fine the excavator pursuant the other section. |
| | Action to recover. -- |
| | (1) This subsection applies if a proceeding has not been initiated before the Authority. |
| | (2) A court of competent jurisdiction may assess a civil penalty of up to 10 times the cost of repairs to the underground facility caused by the damage, dislocation, or disturbance against a person that has committed a subsequent offense under subsection (a)(1) of this section. |
| | (3) An action to recover a civil penalty under this subsection shall be brought by an owner of a damaged, dislocated, or disturbed underground facility or the Attorney General in a court of competent jurisdiction in Baltimore City or the county in which the damage, dislocation, or disturbance occurred. |
| | (4) The party bringing an action under this subsection may recover reasonable attorney's fees. Md. PUBLIC UTILITIES Code Ann. § 12-135. |
| MA | Massachusetts has a limited One Call Statute but it is silent on fines, penalties or liability. |
| MI | According to the Michigan statute, excavators who violate the statute "shall be liable for the resulting damage to the underground facilities, but the liability for damages shall be reduced in proportion to the negligence of the public utility if it fails to comply with section 8." MCLS § 460.714 |
| | "This act does not affect any civil remedies for damage to public utility facilities and does not affect any civil remedies a person may have for actual damage to the person's property caused by a public utility's negligence in staking its facilities, except as otherwise specifically provided for in this act." MCLS § 460.713 |
| MN | In addition to the usual fines, according to the Minnesota statute, "if an excavator damages an underground facility, the excavator shall reimburse the operator for the cost of necessary repairs, and for a pipeline the cost of the product that was being carried in the pipeline and was lost as a direct result of the damage. |
| | Reimbursement is not required if the damage to the underground facility was caused by the sole negligence of the operator or the operator failed to comply with section 216D.04, subdivision 3." Minn. Stat. § 216D.06 |
| MS | Mississippi's One Call Statute provides that damagers "shall be responsible for any and all costs and expenses incurred by the operator in restoring, correcting, repairing or replacing the damaged line or facility." Miss. Code Ann. § 77-13-7.  The statute also provides that "In addition to any other rights and remedies which a person may have, any person shall have the right to resort to and apply for injunctive relief, both temporary and permanent, in any court of competent jurisdiction to |

| | |
|---|---|
| | enforce compliance with the provisions of this chapter and to restrain and prevent violations and threatened violations thereof." Miss. Code Ann. § 77-13-19 |
| MO | Missouri's statute provides for up to a $10,000 fine.  This fine likely does not affect other civil remedies.  "The failure of any excavator to give notice of proposed excavation activities as required by this chapter shall be a rebuttable presumption of negligence on his part in the event that such failure shall cause injury, loss or damage. In addition to any penalties provided herein, liability under common law may apply." § 319.040 R.S.Mo. |
| MT | Montana's statute contains the most definite statement regarding civil liability resulting from a violation of the One Call Statute.  It reads:<br>"Liability for damages to underground facilities.<br>  (1)  (a) If any underground facility is damaged by an excavator who has failed to obtain information as to its location as provided in 69-4-503, then the excavator is liable to the owner of the underground facility for the entire cost of the repair of the facility. The excavator is also liable to the underground facility owner that is a member of a one-call notification center pursuant to 69-4-502(2)(a) for a damage fee. Damage fees must be assessed as follows:<br>(i)  25% of the total cost of repairing the underground facility not to exceed $ 125 for the first incident;<br>(ii)  50% of the total cost of repairing the underground facility not to exceed $ 500 for the second incident; and<br>(iii)  $ 1,000 for the third and each subsequent incident.<br>(b)  An underground facility owner may levy only one fee for each incident.<br>(c)  If there is more than one underground facility affected by an incident, then each underground facility owner that is a member of a one-call notification center pursuant to 69-4-502(2)(a) may levy one damage fee for that incident.<br>(2)  Payment of costs and fees described in this section is due within 30 days of billing by the owner of the underground facility. The underground facility owner may enforce collection in a court of competent jurisdiction.<br>(3)  If information requested pursuant to 69-4-503 is not provided within the time specified in that section, excavators damaging or injuring underground facilities are not liable for that damage or injury, unless caused by their negligence, and are not liable for the damage fees assessed under subsection (1).<br>(4)  The act of obtaining information as required by this part does not excuse an excavator making any excavation from doing so in a careful and prudent manner, nor does it excuse the excavator from liability for any damage or injury resulting from the excavator's negligence." Mont. Code Anno., § 69-4-505 |
| NE | According to Nebraska's statute:<br>"An excavator who fails to give notice of an excavation pursuant to section 76-2321 and who damages an underground facility by such excavation shall be strictly liable to the operator of the underground facility for the cost of all repairs to the underground facility. An excavator who gives the notice and who damages an underground facility shall be liable to the operator for the cost of all repairs to the underground facility unless the damage to the underground facility was due to the operator's failure to comply with section 76-2323. An excavator who fails to give notice of an excavation pursuant to |

**ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:**
**A FIFTY STATE (AND WASHINGTON D.C.) SURVEY**

|  |  |
|---|---|
|  | section 76-2321 and who damages an underground facility that is operated by the excavator shall not be in violation of the One-Call Notification System Act.<br>In addition to any liability provided in this section an operator of a damaged underground facility shall be entitled to any other remedies available at law or in equity provided by statute or otherwise." R.R.S. Neb. § 76-2324 |
| NV | According to the Nevada statute, the One Call statutory provisions "do not affect any civil remedies provided by law for personal injury or property damage and do not create a new civil remedy for any personal injury or property damage. Nev. Rev. Stat. Ann. § 455.180 |
| NH | According to the New Hampshire statute, damage to an underground facility may result in a fine of $500. For a second offense the fine can be up to $5000. These fines are "in addition to any liability for the actual damages."RSA 374:55 |
| NJ | The New Jersey statute includes an extensive fines provision. It then reads that "pursuit of any remedy specified in this section shall not preclude the pursuit of any other remedy, including any civil remedy for damage to an operator's underground facilities or for damage to a person's property, provided by any other law. Administrative and judicial remedies provided in this section may be pursued simultaneously." N.J. Stat. § 48:2-86<br>Also, "evidence that an excavation or demolition that results in any damage to an underground facility was performed without providing the notice required pursuant to section 10 [C.48:2-82] of this act shall be prima facie evidence in any civil or administrative proceeding that the damage was caused by the negligence of the person engaged in the excavation or demolition." N.J. Stat. § 48:2-89 |
| NM | According to the New Mexico statute, "If any underground facility is damaged by any person who failed to make reasonable efforts to determine its location as provided in Chapter 62, Article 14 NMSA 1978, that person shall reimburse the owner of the underground facility for the actual cost of the damage to the underground facility, including the cost of restoration of services. The person engaging in the excavation may also be liable to the owner or operator of the underground facility for the comparative negligence of the person engaging in the excavation which results in damage to the facility for an additional amount not to exceed three hundred thousand dollars ($ 300,000) for each occurrence." N.M. Stat. Ann. § 62-14-6 |
| NY | The New York statute provides for the typical fines and a complex scheme for imposing and collecting those fines. It then reads, "Except as otherwise provided in this subdivision, nothing in this article shall impair, limit or reduce the statutory, common law or contractual duties or tort or other liability of any excavator excavating or demolishing in the vicinity of underground facilities." NY CLS Gen Bus § 765<br>Also, "[i]n the event that, as a result of a violation of any of the provisions of this article by an excavator, it is necessary that an operator make any repair to or provide new support to an underground facility, the excavator shall be liable to the operator for reasonable costs so incurred." NY CLS Gen Bus § 765 |
| NC | North Carolina's One Call Statute is silent on remedies, including fines and civil liability. |
| ND | According to North Dakota's statute, "If an excavator fails to comply with this chapter or damages an underground facility, |

|  |  |
|---|---|
|  | the excavator is liable for all damages caused by the failure to comply with this chapter and for all damages to the facilities and must reimburse the operator for the cost of repair and restoration, loss of product, and interruption of service occurring because of the damage or injury to the facilities, together with reasonable costs and expenses of suit, including reasonable attorney's fees." N.D. Cent. Code, § 49-23-06 |
| OH | The Ohio statute is silent on civil remedies and liability except for a short provision on fines. |
| OK | According to the Oklahoma statute: "Any excavator who damages or cuts an underground facility, as a result of negligently failing to comply with the provisions of the Oklahoma Underground Facilities Damage Prevention Act or as a result of failing to take measures for the protection of an underground facility shall be liable to the operator of the underground facility for the repair of the damaged underground facility." 63 Okl. St. § 142.9a |
| OR | The Oregon statute is silent on civil remedies and liability. |
| PA | The Pennsylvania statute provides for fines between $2500 and $50,000.  However, the statute also says "the provisions of this act shall not affect any civil remedies for personal injury or property damage, except as otherwise specifically provided for in this act." 73 P.S. § 182.2.  The statute also says that an excavator's liability for damage to the underground facility will be reduced in accordance with the liability on the part of the owner.  73 P.S. § 180 |
| RI | The Rhode Island statute also provides for fines but says that "this chapter shall not be construed to affect any civil remedies for personal injury or property damage (including underground utilities), except as otherwise specifically provided for in this chapter."  R.I. Gen. Laws § 39-1.2-13 |
| SC | The South Carolina statute provides for a fine of $1000 to be split between the PUC and the Attorney General's office. However, the statue also says that "this chapter does not affect any civil remedies for personal injury or property damage except as otherwise specifically provided for in this chapter. The penalty provisions of this chapter are cumulative to and not in conflict with any provisions of law with respect to civil remedies for personal injury or property damage."S.C. Code Ann. § 58-35-120 |
| SD | The South Dakota statute provides for fines ranging between $1000 and $5000 for violations of the statute.  These fines are "in addition to all other penalties provided by law." S.D. Codified Laws § 49-7A-18 |
| TN | The Tennessee statute provides for fines and misdemeanor charges and penalties but is silent on civil remedies. Unlike most of the other statutes, it does not indicate that the fines and penalties are in addition to other legal or equitable remedies. Tenn. Code Ann. § 65-31-112.  According to a previous statutory provision, "The financial impact of all damages to underground utilities shall be calculated using generally accepted accounting principles (GAAP)."  Tenn. Code Ann. § 65-31-111.  However, this provision does not provide for civil remedies either and does not on its face require the calculation of the financial impact of damages for purposes of determining the amount of liability of a damager. Therefore, even to the extent that civil remedies are allowed, common law would apply to those claims. |
| TX | The Texas statute provides for fines but says that "except as otherwise specifically provided by this chapter, this chapter, including Section 251.201, does not affect any civil remedy for personal injury or for property damage, including any |

**ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:**
**A FIFTY STATE (AND WASHINGTON D.C.) SURVEY**

|   |   |
|---|---|
|   | damage to an underground facility." Tex. Utilities Code § 251.008 |
| UT | The Utah statute provides for fines and civil penalties but then says "a civil penalty under this section is in addition to any damages that an operator or an excavator may seek to recover.<br>In an action brought under this section, the prevailing party shall be awarded its costs and attorney fees as determined by the court.  Utah Code Ann. § 54-8a-8 |
| VT | The Vermont statute provides for fines ranging between $500 and $1500 but says that those fines are "in addition to any other remedies or penalties provided by law or any liability for actual damages." 30 V.S.A. § 7008 |
| VA | According to the Virginia statute, "if any underground utility line is damaged as a proximate result of a person's failure to comply with any provision of this chapter, that person shall be liable to the operator of the underground utility line for the total cost to repair the damaged facilities as that cost is normally computed by the operator, provided the operator is a member of the notification center covering the area in which the damage to the utility line takes place. The liability of such a person for such damage shall not be limited by reason of this chapter.<br>Except as specifically set forth herein, the provisions of this chapter shall not be construed to either abrogate any rights, duties, or remedies existing under law or create any rights, duties, defenses, or remedies in addition to any rights, duties, or remedies existing under law." Va. Code Ann. § 56-265.25 |
| WA | The Washington statute provides for fines and civil penalties.  However, according to the statute, "this chapter does not affect any civil remedies for personal injury or for property damage, including that to underground facilities, nor does this chapter create any new civil remedies for such damage."   Rev. Code Wash. (ARCW) § 19.122.070 |
| WV | According to the West Virginia statute:<br>"If any underground facility is damaged by a person who has failed to comply with any provision of this section, that person is liable to the operator of the underground facility for the total cost to repair the damage in an amount equal to that as is normally computed by the operator, provided that the operator:<br>  (1) Is a member of the one-call system covering the area in which the damage to the facility takes place; and<br>  (2) Upon receiving the proper notice in accordance with this article, has complied with the provisions of section three [§ 24C-1-3] of this article:<br>If the utility company is not a member of the One-Call system, liability will be determined by principles of common law." W. Va. Code § 24C-1-5 |
| WI | The Wisconsin statute does not include a provision on civil damages.  It only discusses administrative "forfeiture" of $2,000. |
| WY | According to the Wyoming statute,<br>"If an excavator fails to comply with W.S. 37-12-302(c) and damages an underground facility during an excavation, or fails to exercise reasonable care in excavating and damages a located underground facility during an excavation, the excavator shall be liable for: |

ONE CALL LAWS—RECOVERY ALLOWED UNDER EACH STATE'S STATUTE:
A FIFTY STATE (AND WASHINGTON D.C.) SURVEY

|  | (A) Any cost or damage incurred by the operator in restoring, repairing or replacing its damaged underground facility, together with reasonable costs and expenses of suit, including reasonable attorney fees; and<br>(B) Any injury or damage to persons or property resulting from the damage to the underground facility. The excavator shall also indemnify and defend the operator against any and all claims or actions, if any, for personal injury, death, property damage or service interruption resulting from the damage to the underground facility." Wyo. Stat. § 37-12-306 |

**Plaintiffs' Opposition to Defendants'**
**Motion to Strike Class Allegations**

# Exhibit 5

Chart on Subclass Proximate Causation

*James D. Hinson Electrical Contracting, Inc., et al. v. AT&T Services, Inc., et al.*
U.S. District Court, Middle District, Florida, Jacksonville Division
No. 3:13-cv-29-J-32JRK

## Proximate Cause:  A Nine State Survey

| BellSouth Class State | Restriction on damages to those that are proximately caused by damager. |
|---|---|
| Alabama | *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) ("Proximate cause is an essential element of both negligence claims and wantonness claims.  Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred.  An injury may proximately result from concurring causes; however, it is still necessary that the plaintiff prove that the defendant's negligence caused the injury") (internal citations omitted). *See also Gooden v. City of Talladega*, 966 So. 2d 232 (Ala. 2007) (holding that even where a tortfeasor has violated a statute, **no damages can be recovered unless there is a showing that the violation proximately caused the injury**) |
| Florida | *Coker v. Wal-Mart Stores,* 642 So. 2d 774 (Fla. Dist. Ct. App. 1st Dist. 1994) (holding that even where a violation of a statute created per se negligence, no recovery was appropriate unless the violation proximately caused the injury); *Ratley v. Batchelor*, 1992 Fla. App. LEXIS 4832, *4 (Fla. Dist. Ct. App. 1st Dist. May 1, 1992) (holding that the fact that a person violated a statute or ordinance "does not create a cause of action for the injuries inflicted, or preclude recovery for an injury sustained, **unless such violation was a proximate cause of the injury**.") (emphasis added) |
| Georgia | *Royal v. Ferrellgas, Inc.,* 254 Ga. App. 696 (Ga. Ct. App. 2002) (where violations of a statutory duty were not the proximate cause of the plaintiff's injuries, no recovery could be had) |
| Kentucky | *Ross v. Jones*, 316 S.W.2d 845, 846 (Ky. 1958) ("While violation of a statute may constitute what we designate 'negligence per se,' **the question of proximate cause must always be determined**.") (emphasis added) |
| Louisiana | *Lee v. Carwile*, 168 So. 2d 469, 472 (La.App. 3 Cir. 1964) ("Where a statute is enacted to |

## Proximate Cause:  A Nine State Survey

|  |  |
|---|---|
|  | protect the class of persons in which the plaintiff is included against the type of loss or injury which in fact has been sustained, an unexcused violation of such a statute is 'negligence per se,' and this negligence is actionable **if it is a legal or proximate cause of the accident**.  The violation is a proximate cause of the plaintiff's injury if the risk or harm encountered by him fall within the scope of the statute's protection, and if such violation is a cause-in-fact of such injury) (emphasis added and internal citations omitted) |
| Mississippi | *Simpson v. Boyd*, 880 So. 2d 1047, 1053 (Miss. 2004) ("Even if a defendant breaches a statutory duty and [the plaintiff] is within the class protected by the violation, **the plaintiff must still show that the violation proximately caused the injury**.") (emphasis added) |
| North Carolina | *Hendrix v. Southern R. Co.*, 150 S.E. 873, 873 (1930) ("It is well settled in this jurisdiction that the violation of a town or city ordinance, or State statute, is negligence per se, but the **violation must be the proximate cause of the injury**.") (emphasis added) |
| South Carolina | *Scott v. Greenville Pharmacy, Inc.*, 48 S.E.2d 324 (S.C. 1948) (a violation of a statute, while negligence per se, did not support recovery of damages because **the violation was not the proximate cause of the injury**) (emphasis added); *Whitlaw v. Kroger Co.*, 306 S.C. 51 (S.C. 1991) (same) |
| Tennessee | *Bennett v. Putnam County*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000) ("In order to recover under the theory of negligence per se, a party must establish three elements. First, the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public. Second, the injured party must be within the class of persons intended to benefit from or be protected by the statute. Finally, **the injured party must show that the negligence was the proximate cause of the injury**.") (internal citations omitted and emphasis added) |