UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| JAMES D. HINSON ELECTRICAL CONTRACTING CO., INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:13-cv-29-J-32JRK |
| v. | ) ) | |
| AT&T SERVICES, INC., et al., | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Blythe Development has brought claims against Defendants under NCUDTPA on behalf of a North Carolina subclass arising from Defendants' improper collection of charges for claims processing, "loss of use", and unnecessary items. Plaintiff Hinson Electric has brought claims against Defendants under FDUTPA arising from Defendants' improper charges for "loss of use", seeking only declaratory and injunctive relief. The central foundation for both claims is that Defendants bill and collect for damages that they does not actually sustain and that are not recoverable as a matter of law.

In their extraordinary Motion to Dismiss, Defendants now claim that the NCUDTPA and FDUTPA claims must fail because their actions in improperly billing and collecting money from Blythe Development and Hinson Electric, as well as the proposed subclasses, are protected under the *Noerr-Pennington* doctrine. Defendants' Motion fails for a number of reasons, among them: Plaintiffs' claims do not depend "solely" on allegations of "pre-litigative" conduct; the bills about which Plaintiffs complain are not "pre-litigative" conduct; the *Noerr-Pennington* doctrine does not apply outside the antitrust context; *First Amendment* immunity does not extend to

claims that are baseless or a sham; and, unfair and deceptive debt collection activity like that conducted by Defendants is not constitutionally protected. Each of these arguments is elaborated upon below. But, in sum, Defendants argue that they may bill and collect from those who damage their equipment – for whatever charge and for whatever damage Defendants determine they want – as a matter of *First Amendment* right. That argument is without merit and stretches any conception of the *Noerr-Pennington* doctrine, or rights under the *Petition Clause* of the *First Amendment,* beyond reason. The Motion to Dismiss thus should be denied.

## ARGUMENT AND CITATION OF AUTHORITIES

I. **PLAINTIFFS' NCUDTPA AND FDUTPA CLAIMS ARE NOT PREDICATED "SOLELY" ON "PRE-LITIGATIVE" ACTIVITIES.**

Defendants' Motion to Dismiss should be denied because it necessarily depends on a false characterization of Plaintiffs' NCUDTPA and FDUTPA claims. In particular, Defendants argue that Plaintiffs' claims "predicate liability on AT&T's transmissions of 'Claim[s] for Damages' to contractors who damaged AT&T's facilities" and, therefore, that the claims "predicate liability **solely** on 'pre-litigative' activities." Defendants' Motion at 1 (emphasis added). But, Plaintiffs **do not** bring their trade practices claims "solely" because of Defendants' practice of sending false and misleading bills (even assuming those are pre-litigative activities). Rather, as alleged in the Complaint, it is Defendants' practice of collecting money for "damages" that they are not entitled to under the law that is an unfair and deceptive practice. For instance, Blythe Development alleges that "Defendants committed unfair trade practices in violation of the statute **by billing for and collecting** charges for claims processing, loss of use, and unnecessary items." (Complaint at ¶ 56). Blythe similarly alleges that "Defendants committed a deceptive trade practice in violation of the statute **by billing for and collecting** charges for claims processing, loss of use, and unnecessary items." (Complaint at ¶ 57). Hinson Electric, on the

other hand, seeks only declaratory and injunctive relief under FDUTPA, including a "declaratory judgment that Defendants' loss of use charges are improper." (Complaint at ¶ 66). Because Plaintiffs seek to impose NCUDTPA and FDUTPA liability on the basis of actions beyond simply threatening or filing suit (i.e., the actual unfair collection of funds), neither *Noerr-Pennington* nor the *First Amendment* provide immunity.

NCUDTPA and FDUTPA do not require a showing that Defendants' damages bills were "deceptive" or otherwise require that Plaintiffs' claims be "predicated" solely (or at all) on the bills themselves. Indeed, both NCUDTPA and FDUTPA ban "unfair" as well as "deceptive" trade practices. N.C. Gen. Stat. § 75-1.1; Fla. Stat. § 501.024. Under North Carolina law, a practice is "unfair" if it is "unethical or unscrupulous," and it is "deceptive" if it has a "tendency to deceive." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Under Florida law, "an unfair practice is one that offends public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" while a "deceptive practice" involves a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgt., Inc.,* 842 So.2d 773, 777 (Fla. 2003). Neither statute requires that an unfair practice also be deceptive. It follows logically that a plaintiff who suffers a loss as a result of an "unfair" practice is entitled to damages or an injunction, regardless of whether the plaintiff was deceived.

Unlike the present case, cases interpreting and applying the *Noerr-Pennington* doctrine universally address scenarios in which the plaintiff (or counterclaim plaintiff) is attempting to establish liability **solely** on the fact that the defendant threatened or brought suit against it. The Eleventh Circuit in *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552 (11th Cir. 1992) noted that it was the "concerted threats and institution of litigation themselves" that provided the source of

the claim. *See also, Atico Int'l USA, Inc. v. Luv N' Care, Ltd*, 2009 U.S. Dist. LEXIS 73540 (S.D.Fla. 2009)(commenting that under *First Amendment* immunity "a complaint that alleges **only** pre-litigative and litigative activities cannot state a cause of action.")(emphasis added). In *Pods Enterprises, Inc. v. ABF Freight Systems, Inc.*, 2011 U.S. Dist. LEXIS 119657, at *3-4 (M.D. Fla. 2011), the defendant asserted a counterclaim alleging that plaintiff had violated unfair competition and antitrust laws simply by "sending cease-and-desist letters and instigating sham litigation with no reasonable basis for success." There is no indication in the Court's opinion that the counterclaim was based on the plaintiff's improper collection of money or other similar damages. *See also*, *Rolex Watch U.S.A., Inc. v. Rainbow Jewlery, Inc.*, 2012 U.S. Dist. LEXIS 133791, at *2 (S.D.Fla. 2012)(counterclaim based solely on "injuries it has sustained in having to defend against Rolex's [suit].")

Indeed, Defendants' Motion implicitly concedes that if the trade practices claims are not predicated "solely" on "pre-litigative conduct" than its argument must fail. For instance, in footnote 1, Defendants note that they do not seek dismissal of the unjust enrichment claims because those claims "do not require a showing that AT&T's prelitigative conduct constituted 'unfair' or 'deceptive' practices." Defendants' Motion at 1 n.1. Similarly, in footnote 3, Defendants note that "Plaintiffs' unjust enrichment claims do ***not*** predicate liability on AT&T's 'pre-litigative conduct.'" But, there is no reason to distinguish in this manner between the trade practices claims and Plaintiffs' unjust enrichment claim. All claims seek to impose liability – indeed, primarily seek to impose liability – because of Defendants' improper collection of sums to which they are not entitled.

## II.  DEFENDANTS' BILLS DO NOT CONSTITUTE "PRE-LITIGATIVE" CONDUCT.

The very premise of Defendants' argument – that its "bills" or "claims for damages" constitute "pre-litigative" activity – is without merit.  Nowhere in Defendants' bills do they threaten or mention litigation, and no bill (or "claims for damages") mentions that it is a settlement demand or effort to resolve a disputed matter bound for litigation.  Plaintiffs concede that settlement demands and other pre-suit conduct can under certain circumstances be protected by the *First Amendment* right to petition, as in *McGuire Oil* and *Atico*, but the "bills" at issue here don't remotely mention litigation, and there is no allegation or evidence that the bills tend to lead to litigation (they do not).[1]

Plaintiffs are unaware of **any** case, and Defendants **have cited no case**, in which a court has stretched the *Noerr-Pennington* doctrine or *First Amendment* immunity so far as to apply to a simple bill sent from one party to another without the threat of litigation, indirectly or directly.  It simply cannot be the case that a "bill" constitutes a threat of litigation in and of itself; otherwise any bill, in whatever context, would be considered "pre-litigative" conduct.  For instance, if AT&T sent a customer a telephone bill that contained false or deceptive charges, would it be a "pre-litigative" activity because a refusal by the customer to pay the bill might result in a lawsuit for breach of contract?  Of course not.  There is no apparent reason why the result would be different simply because a suit in the facilities damages context would be found in tort rather than contract.

---

[1] Neither the Complaint nor Defendants' Motion mentions the extent to which Defendants' bills result in litigation, or even the threat of litigation.  However, based on discovery conducted in *Hinson I*, Plaintiffs believe that the vast majority of bills are paid in full, that a small percentage are compromised, and that a minute percentage (likely under 1%) ever become the subject of litigation.  Indeed, the form of the documents themselves seems designed to foster the belief that they are routine bills and that there are no disputes to be litigated.

5

In this regard, this Court's discussion in *North Star Capital Acquisitions, Inc. v. Krig*, 611 F.Supp.2d 1324 (M.D.Fla. 2009) is instructive. In that opinion, the Court noted that a "letter and stipulation" served on the counterclaim plaintiffs "were more akin to an attempt to collect a debt in its entirety, rather than a settlement negotiation." Although *North Star Capital* involved the applicability of Florida's litigation privilege, the Court's comment strongly implies that not every communication between parties with a dispute constitutes a litigative or even "pre-litigative" activity. In any event, there is not a single case cited by Defendants, or known to Plaintiffs, which has applied even the most expansive view of the *Noerr-Pennington* doctrine to a "bill" or "claim for damages" which does not mention litigation.[2]

### III. THE *NOERR-PENNINGTON* DOCTRINE HAS NO APPLICATION OUTSIDE THE ANTITRUST CONTEXT.

Defendants have asserted that the *Noerr-Pennington* doctrine provides "absolute" immunity for "pre-litigative" activity unless the underlying claim is a "sham." (Defendants' Motion at 8). Putting aside the question of whether Defendants' conduct constitutes "pre-litigative" conduct **and** the applicability of the "sham" exception in the instant case, Defendants reliance on the *Noerr-Pennington* doctrine to bar unfair trade practices claims is misplaced. That doctrine, which arose in the context of antitrust cases, was based on **both** the statutory language of the Sherman Act as well as the First Amendment's right to petition. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559 (11th Cir. 1992)(noting that the source of the doctrine is

---

[2] Defendants note that Plaintiffs' Complaint references a letter sent from counsel for Defendants to Hinson Electric which did in fact threaten litigation. Plaintiffs, however, do not seek to impose liability on Defendants merely because of the contents of the letter. Rather, as is made clear by Paragraph 26 of the Complaint, the letter was referenced to demonstrate Hinson Electric's standing to seek declaratory and injunctive relief. That single letter should not be conflated with the common practices which affect all proposed class members and are actually at issue here – Defendants' use of deceptive bills independent of any litigation or pre-litigation activity **and** its unfair collection of enormous sums from class members to which it has no legally cognizable claim.

"mixed"). In cases outside the antitrust context, the Sherman Act – and thus the *Noerr-Pennington* doctrine – has no application.

Immunity for litigation or pre-litigation conduct outside of the antitrust litigation context can exist only on the basis of the *Petition Clause* of the *First Amendment*. For this reason, courts that accurately analyze application of any such immunity have been careful to reference the *Noerr-Pennington* doctrine only by analogy and confine their analyses strictly to the *First Amendment*'s right to petition. The Tenth Circuit, for instance, has noted as follows:

> While we do not question the application of the right to petition outside of antitrust, it is a bit of a misnomer to refer to it as the *Noerr-Pennington* doctrine; a doctrine which was based on *two* rationales. In our view, it is more appropriate to refer to immunity as *Noerr-Pennington* immunity only when applied to antitrust claims. In all other contexts, including the present one, such immunity derives from the right to petition. **This distinction is not completely academic**. Antitrust cases that grant *Noerr-Pennington* immunity do so based upon *both* the Sherman Act and the right to petition. These precedents, founded in part upon a construction of the Sherman Act, are not completely interchangeable with cases based solely upon the right to petition.

*Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 208 F.3d 885 (10th Cir. 2000)(boldface added). In a later case, the Tenth Circuit emphasized the importance of proceeding with caution outside the antitrust context:

> [B]ecause the *Noerr-Pennington* doctrine is based on both antitrust law and the *First Amendment*, it does not apply broadly outside the antitrust context. Rather, in non-antitrust cases, immunity derives solely from the *First Amendment* right to petition. Thus … we apply *Noerr-Pennington* immunity to cases outside the antitrust context with caution.

*The Personnel Department, Inc. v. Professional Staff Leasing Corp.*, 297 Fed.Appx. 773, 778-79 (10th Cir. 2008) (internal citations omitted).

Although it is true that many courts have referred (inaccurately) to the *Noerr-Pennington* doctrine outside of the antitrust context, the Supreme Court itself has not. And, indeed, the Supreme Court's recent analysis of the immunity granted by the right to petition in another

context strongly suggests that *Noerr-Pennington* precedents do not apply broadly in the non-antitrust context. *BE & K Construction Co. v. NLRB*, 536 U.S. 516, 535 (2002) (noting that the burdens on speech in the labor context are different than in the antitrust context and thus conducting a separate, different analysis of the "sham" exception).

The Eleventh Circuit, in the *McGuire Oil* decision cited so frequently by Defendants, did not in fact invoke the *Noerr-Pennington* doctrine to find immunity from unfair trade practices claims, but simply the *First Amendment's* right to petition. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1562 (11th Cir. 1992); *see also Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*, 2009 U.S. Dist. LEXIS 73540, at *7 (S.D. Fla. 2009)(noting that "a form of litigation immunity **akin** to the immunity provided by the Noerr-Pennington doctrine applies to non-antitrust cases, such as the FDUTPA and tortuous interference claims at issue in this action.")(boldface added). Indeed, the District Court in *Atico* specifically commented that "it is arguably more precise to cite the *First Amendment's* right to petition, rather than the Noerr-Pennington doctrine, when precluding non-antitrust claims based on allegations of pre-litigative and litigative activity." *Id.* at *7 n.2; *see also DIRECTV, Inc. v. Cavanaugh*, 321 F.Supp. 2d 825 (E.D.Mich. 2003)(noting that reference to the *Noerr-Pennington* doctrine outside the antitrust context is an "unfortunate misnomer.")

**IV. THE FIRST AMENDEMENT "RIGHT TO PETITION" DOES NOT GRANT DEFENDANTS ABSOLUTE IMMUNITY AND DOES NOT PROTECT BASELESS OR NON-MERITORIOUS CLAIMS.**

The Supreme Court has held that the *Petition Clause* does not confer absolute immunity from suit:

> To accept petitioner's claim of absolute immunity would elevate the *Petition Clause* to special *First Amendment* status. The *Petition Clause*, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish and assemble. These *First Amendment* rights are inseparable, and there is no sound basis for granting greater constitutional protection to statement made in a petition … than other *First Amendment* expressions.

*McDonald v. Smith*, 472 U.S. 479, 485 (1985).  Thus, "the *Petition Clause* protects legitimate petitioning activity but not sham petitions, baseless litigation, or petitions containing 'intentional and reckless falsehoods.'"  *Id.* at 484; *see Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 615-16 (6th Cir. 2009).  Even if this Court were to determine that Plaintiffs' trade practices claims were predicated "solely" on protected "pre-litigative" activity, or that the *First Amendment* otherwise might provide some immunity, Defendants would not be entitled to immunity because Plaintiffs' Complaint clearly alleges that Defendants' charges for claims processing, loss of use, and unnecessary items are baseless.  Whether this is recognized as the "sham" exception to the *Noerr-Pennington* doctrine, or simply as the natural limitation of *First Amendment* immunity under the *Petition Clause*, is of little moment.  The result is the same: bills, claims, pre-suit demand letters, or litigative actions that are false, deceptive, misleading, or baseless are not entitled to immunity from suit.  *See Hartman, supra* at 616; *Sweet Street Deserts, Imnc. v. Chudleigh's Ltd.*, 2013 U.S. Dist. LEXIS 49283, at *20-23 (E.D.Pa. 2013)(finding that a presuit demand letter was not entitled to *First Amendment* protection because it was baseless).

The gravamen of Plaintiffs' Complaint is that Defendants are billing for and collecting "damages" that are not, as a matter of law, legitimately recoverable.  Plaintiffs have alleged that "Defendants are not legally entitled to recover for claims processing costs under the common law of any state in which Defendants do business", (Complaint at ¶ 16), that they routinely bill damagers for "loss of use" which they are not legally entitled to collect, (Complaint at ¶ 18), that "the 'loss of use' charge is nothing more than an effort to collect for losses that Defendants do not in fact incur", (Complaint at ¶ 20), and that they also bill damagers for items that are not necessary and for which "Defendants have no legal right to bill." (Complaint at ¶21).  While

9

Plaintiffs' Complaint does not use the words "sham" or "baseless", the allegations clearly set forth Plaintiffs' position that Defendants' damages claims are objectively baseless.[3] As a result, and certainly at this stage of the litigation, Defendants are not entitled to claim immunity from suit. If Plaintiffs' allegations are correct – i.e. that Defendants are billing and collecting for damages that they did not incur and are not entitled to collect – then the *Petition Clause* of the *First Amendment* provides no immunity for those false bills.

The limits of *First Amendment* immunity in the context of claims for unfair and deceptive conduct have been cogently addressed by several district courts. In *DIRECTV v. Cephas*, 294 F.Supp.2d 760 (M.D.N.C. 2003), the court addressed the question of *Noerr-Pennington* immunity to a claim for violation of NCUDTPA. In that case, the defendant brought counterclaims against DirectTV based solely on its transmission of allegedly unfair and deceptive pre-litigation demand letters. *Id.* at 766. The District Court concluded that *Noerr-Pennington* immunity did not apply to bar claims predicated on threatened, non-meritorious litigation, reasoning that immunity would only apply if allowing demand letters to become the basis for liability "would have the effect of deterring future meritorious litigation":

> [C]ounterclaims brought under the NCDCA and the UDTPA do not have a chilling effect on good faith litigation. Since both statutes prevent only unfair and deceptive acts, parties bringing or threatening to bring meritorious, good faith claims cannot by definition be subject to liability under the NCDCA or the UDPTA. As such, parties bringing good faith claims under the NCDCA or the UDPTA do not need the protections of the Noerr-Pennington doctrine. Conversely, parties who threaten consumers with nonmeritorious litigation should be subject to liability under either statute, for these acts may well be unfair and deceptive.

*Id.* at 767. Stated differently, claims for unfair and deceptive trade practices based on false or

---

[3] If the Court believes that the "sham" exception is critical to deciding Defendants' Motion to Dismiss, and that Plaintiffs have not sufficiently pled that Defendants' claims were objectively (or subjectively) baseless, Plaintiffs would ask for leave to file an Amended Complaint setting forth such allegations in more detail.

misleading demand letters do not **by definition** threaten *First Amendment* rights because, if true, the "petitoning" activity is not worthy of protection. Another district court in a similar case involving DirecTV stated it this way:

> [I]t is difficult to see how subjecting DIRECTV to liability … would chill its right to petition the government and seek redress. At issue in this motion is not DIRECTV's right to use demand letters as a means of encouraging settlement, but rather its use of false or misleading statements in the demand letters. If [the] allegations are proven at trial, punishing DIRECTV will not deter future use of demand letters. At best, it will encourage the company to investigate carefully its accusations and to be precise in the language it uses when attempting to settle…

*DirecTV, Inc. v. Cavanaugh*, 321 F.Supp.2d 825, 842 (E.D.Mich. 2003).

Much of Defendants' Motion focuses on its argument that the Court should narrowly construe both NCUDTPA and FDUTPA to avoid reaching any constitutional question. But, as shown here, there **is no** constitutional question or any "burden" on Defendants' right to petition. As noted above, Plaintiffs' claims do not arise "solely" from "petitioning" activity and, indeed, do not concern any kind of "petitioning" activity whatsoever. Moreover, "sham" petitions or petitions which are alleged to be objectively basis enjoy **no protection** under either the *Petition Clause* or *Noerr-Pennington*. Simply put, Plaintiffs' allegations under NCUDTPA and FDUTPA present no "burden" on Defendants' "right to petition" and thus pose no constitutional quandary which would require this Court to unnecessarily limit the broad remedial powers of NCUDTPA or FDUTPA.

V.  **CASELAW INTERPRETING THE FDCPA FORECLOSES DEFENDANTS' ARGUMENT THAT IT HAS *FIRST AMENDMENT* PROTECTION FOR DECEPTIVE BILLS OR "CLAIMS"**

*First Amendment* immunity for petitioning activities does not apply to unfair and deceptive debt collection activities, like those engaged in by Defendants here. For decades, the Fair Debt Collection Practices Act (FDCPA) has outlawed unfair and deceptive acts in

connection with collecting debts – such as sending bills falsely stating the amount of debt owed. Courts have **uniformly rejected** challenges to the FDCPA made on the basis that it infringes *First Amendment* rights or violates the *Noerr-Pennington* doctrine. *See, e.g. Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 615-16 (6th Cir. 2009); *Gionis v. Javitch, Block & Rathbone, LLP*, 238 Fed.Appx. 24, 26 (6th Cir. 2007); *Garcia-Contreras v. Brock & Scott, PLLC*, 2010 U.S. Dist. LEXIS 126217, at *38-39 (M.D.N.C. 2010). And, indeed, the United States Supreme Court has specifically held that the FDCPA extends to impose liability on attorneys "even when that activity consists of litigation." *Heitz v. Jenkins*, 514 U.S. 291, 294 (1995).

In *Heitz,* the Supreme Court considered the question of whether the FDCPA imposed liability on attorneys for improper debt collection activities. The Court held that "the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, **even when that activity consists of litigation**." 514 U.S. at 299. While the Supreme Court in *Heitz* did not address the *Noerr-Pennington* doctrine or *First Amendment* immunity more generally, lower courts have relied upon *Heitz* to hold that immunity does not apply to pre-litigative or litigative collection of debts. *Hartman, supra*; *Gionis, supra*; *Garcia-Contreras, supra*; *Sial v. Unifund CCR Partners*, 2008 U.S. Dist. LEXIS 66666, at *10-12 (S.D. Cal. 2008).

Plaintiffs here do not bring claims under the FDCPA[4], but the challenged activity by Defendants is debt-collection activity or, at a minimum, closely analogous to debt-collection activity. The "bills" or "claims for damages" are indistinguishable in form from typical debt collection bills. While this case does not concern FDCPA claims, it is far more analogous to the FDCPA context than it is to Sherman Act antitrust claims. As noted herein, the gravamen of

---

[4] The FDCPA does not apply to Defendants' activities because Defendants are not "debt collectors" – in that they seek to collect their own debt – and because the debt itself is not a consumer household debt.

Plaintiffs' Complaint is that Defendants bill for and collect damages to which they are not legally entitled. Among many other things, the FDCPA makes unlawful the false representation of the amount of any debt. 15 U.S.C. § 1692e(2)(A). If Defendants' arguments were correct, then the sending by a debt collector of a bill misrepresenting the amount of debt owed would be constitutionally-protected "petitioning" activity and actions under the FDCPA, § 1692e(2)(A), would be subject to dismissal. No court has ever so held.

## VI. NORTH CAROLINA'S LITIGATION PRIVELEGE DOES NOT BAR THE NCUDTPA CLAIM.

North Carolina's litigation privilege extends to "statements made in the course of a pending judicial proceeding [and] to communications relevant to proposed judicial proceedings." *Harris v. NCNB Nat'l Bank of North Carolina*, 355 S.E.2d 838, 842 (N.C. Ct. App. 1987). The privilege extends to "statements preliminary to proposed litigation when the statement is relevant to a proceeding which is **seriously contemplated**." *Id.* at 842-43 (emphasis added). Plaintiffs are unaware of any North Carolina case which has extended the privilege to a simple pre-suit demand letter or, even more so, to a bill such as in this case which does not mention, even implicitly, the possibility of litigation. Moreover, as noted above, Defendants' bills do not normally precede litigation and, indeed, seem designed to give the appearance that there is no dispute for the parties to litigate. The bills sent to damagers are akin to attempts to collect a debt in full, rather than a threat of litigation or the commencement of settlement negotiations in "seriously contemplated" litigation. As a result, North Carolina's litigation privilege does not provide any protection to Defendants from Plaintiffs' NCUDTPA claim. In addition, this argument also fails for the reason that the NCUDTPA claim is not "solely" predicated on the bill, but also arises from Defendants' collection and retention of funds to which they were not legally entitled.

**CONCLUSION**

For all of the foregoing reasons, Defendants' Motion to Dismiss should be denied.

                      SMITH HULSEY & BUSEY


                By    */s/ E. Lanny Russell*
                          E. Lanny Russell
                          James A. Bolling
                Florida Bar Number 0364088
                225 Water Street, Suite 1800
                Jacksonville, Florida 32202
                (904) 359-7700
                (904) 359-7708 (facsimile)
                lrussell@smithhulsey.com
                jbolling@smithhulsey.com


                DOFFERMYRE SHIELDS CANFIELD &
                    KNOWLES, LLC
                Kenneth S. Canfield (to be admitted *pro hac vice*)
                kcanfield@dsckd.com
                Robert E. Shields (to be admitted *pro hac vice*)
                rshields@dsckd.com
                1355 Peachtree Street, N.E., Suite 1600
                Atlanta, Georgia 30309
                Phone: 404-881-8900
                Fax: 404-881-3007


                LAW OFFICE OF DAVID S. HAGY, PLC
                David S. Hagy (to be admitted *pro hac vice*)
                dhagy@hagylaw.com
                1507 16th Avenue South
                Nashville, TN 37212
                Phone: 615-515-7774

SMITH CURRIE & HANCOCK, LLP
Charles W. Surasky
Florida Bar No. 885940
cwsurasky@smithcurrie.com
2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, GA 30303
Phone: (404) 521-3800
Fax: (404) 688-0671


LEWIS & ROBERTS, PLLC
James A. Roberts   (to be admitted *pro hac vice*)
jar@lewis-roberts.com
3700 Glenwood Ave., Suite 410
Raleigh, NC 27612-5529
Phone: (919) 981-0191
Fax: (919) 981-0199

Gary V. Mauney (to be admitted *pro hac vice*)
gvm@lewis-roberts.com
One Southpark Center
6060 Piedmont Row Drive South
Suite #140
Charlotte, NC  28287
Phone:  (704) 347-8990


LAW OFFICE OF JOHN S. KALIL, P.A.
John S. Kalil
jkalil@akjaxlaw.com
Florida Bar No. 243061
6817 Southpoint Parkway, Suite 1402
Jacksonville, Florida  32216
Phone:  904-355-3311
Fax:  904-355-5411

Attorneys for Plaintiffs

15

**CERTIFICATE OF SERVICE**

I certify that on April 29, 2013, I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to James F. Bogan, III, Esq., Cindy D. Hanson, Esq., Taylor Higgins Ludlam, Esq. and Kathryn Ederle, Esq., Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street, Suite 2800, Atlanta, Georgia, 30309-4528 and Albert L. Frevola, Jr., Esq., Conrad & Scherer, LLP, 633 South Federal Highway, 8th Floor, Fort Lauderdale, Florida 33301.

                                                *s/ E. Lanny Russell*
                                                      Attorney