UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES D. HINSON ELECTRICAL
CONTRACTING CO., INC., BLYTHE
DEVELOPMENT COMPANY, and
CALLAWAY GRADING, INC.,
individually and on behalf of all others
similarly situated; and NATIONAL
UTILITY CONTRACTORS
ASSOCIATION,

      Plaintiffs,

v.                                            Case No:   3:13-cv-29-J-32JRK

AT&T SERVICES, INC. and
BELLSOUTH
TELECOMMUNICATIONS, LLC,

      Defendants.

## ORDER

This case is before the Court on Defendants' Motion to Strike Multistate Class Allegations.  (Mot. to Strike, Doc. 14.)   Defendants urge the Court to strike plaintiffs' two proposed multistate classes as inherently unsuitable for class treatment due to variations in the applicable law in each state.  (Id. at 1; Reply 1, Doc. 38.)   Plaintiffs respond that state law does not vary on any material issue and that, in any event, the motion is premature.  (Resp. 1-2, Doc. 29.)   The Court held a hearing in this case on May 31, 2013, the record of which is incorporated here.[1]   (Hr'g Tr., May 31, 2013, Doc.

---

[1] As predicted at the hearing, this decision has been unavoidably delayed by the Court's backlog of cases.

41.) Upon review of the file, the parties' written submissions and oral presentations, and the relevant authority, the Court rules as follows.

**I.   BACKGROUND**

Plaintiffs James D. Hinson Electrical Contracting Co., a Florida corporation, Blythe Development Company, a North Carolina corporation, and Callaway Grading, Inc., a Georgia corporation,[2] are each contractors that at some point damaged underground and above-ground telecommunications cables and equipment—also referred to as "facilities"—maintained by Defendants AT&T Services, Inc. and BellSouth Telecommunications, LLC.[3]  (Compl. ¶¶ 1, 5-7, 14, 23-25.)  Each plaintiff has received and paid bills from defendants for damage to the facilities.  (Id., ¶¶ 23-25.)  Plaintiffs acknowledge defendants are entitled to recover the actual cost of repairing the damaged facilities under state statutes like the Florida Underground Facility Damage Prevention and Safety Act ("FUFDPSA"), Fla. Stat. § 556.101-116, and under state common law.  (Id., ¶ 1.)  Plaintiffs allege, however, that defendants' bills include more than just repair costs, but also charges defendants are not entitled to recover, such as claims processing charges, loss of use charges, and charges for additional items, like the cost of installing "marker balls."  (Id., ¶¶ 1, 15-22.)

---

[2] The National Utility Contractors Association, a membership organization representing utility and excavation contractors around the country, is also a plaintiff in this case. (Compl. ¶ 7.) Though it purports to seek declaratory and injunctive relief on behalf its members (see id., ¶¶ 7, 42, 48, 54), it does not attempt to do so in the form of a class action (see id., ¶¶ 27-31).

[3] The well pleaded allegations in the complaint, which the Court accepts as true at this stage, Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 683 (M.D. Fla. 2002), serve as the basis for this factual background.

2

This case is a sequel to one that first came before the undersigned in 2007, Hinson v. Bell South Communications (*Hinson I*), Case No. 3:07-cv-598-J-32MCR (M.D. Fla). There, Hinson brought claims on its own behalf[4] and on behalf of a class of Florida excavators and excavating contractors against BellSouth, challenging BellSouth's charging for and recovery of claims processing and "corporate overhead" charges, as well as loss of use charges. (Hinson I, Docs. 1, 104.)

Among other things, the Court was called upon in Hinson I to delve into the meaning of section 556.106 of FUFDPSA to determine what charges BellSouth could properly recover. Hinson I, 642 F. Supp. 2d 1318, 1328 (M.D. Fla. 2009); see Hinson I, 796 F. Supp. 2d 1341, 1349-50, 1352 (M.D. Fla. 2011). The Court eventually certified a class of excavators who paid a bill for damage to BellSouth's facilities in Florida, Hinson I, 275 F.R.D. 638, 649 (M.D. Fla. 2011), but the parties reached a settlement before the case approached trial. (See Hinson I, Doc. 196-1.) The settlement specifically reserved the class members' rights to challenge BellSouth's charges for loss of use. (Id. at ¶ 4.6; Doc. 1 at ¶ 25.)

In this case, Hinson II, plaintiffs have dropped any claim relating to corporate overhead charges and limited their causes of action to unjust enrichment and statutory claims under the North Carolina and Florida unfair and deceptive trade practices statutes. (Doc. 1 at ¶¶ 42-67.) But they have expanded their claims to include charges relating to damage to above-ground as well as underground facilities

---

[4] Hinson later added another named plaintiff to the suit. (Hinson I, Doc. 104)

3

and broadened the case into a national class action[5] with four subclasses, including a subclass covering the states where BellSouth does business.[6]  (Id., ¶¶ 27-31.)

According to defendants, the national class and the BellSouth subclass could never be certified under Federal Rule of Civil Procedure 23(b)(3) because variations in state law swamp any issues common to the classes and make the classes unmanageable.  (Doc. 14.)  In particular, defendants believe that the various state statutes providing recovery for damage to underground facilities differ materially (id. at 8-12), as do the requirements of and defenses to a claim for unjust enrichment (id. at 13-20).  These same difficulties make certification under Rule 23(b)(2) impossible, in defendants' view, though they also argue that this case would not fit within Rule 23(b)(2) anyway.  (Id. at 20-22.)  The unsuitability of this case for class treatment is, according to defendants, evident on the face of the complaint, dictating that plaintiffs' multistate class allegations be stricken.[7]  (Id. at 1.)

Plaintiffs respond that defendants' arguments are premature and should wait until class discovery is over and plaintiffs have moved for class certification.  (Doc. 29 at 2.)  Moreover, according to plaintiffs, determining the applicable law will not be hard because Missouri law governs their unjust enrichment claims generally (id. at 6-

---

[5] The proposed national class includes those who damaged facilities in the District of Columbia and every state other than Arizona, Colorado, Indiana, Maryland, Montana, North Dakota, Utah, and Wyoming.  (Doc. 1 at ¶¶ 16, 27.)

[6] The BellSouth subclass covers Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee.  (Id., ¶ 28.)

[7] Defendants also move to dismiss plaintiffs' statutory claims.  (Mot. to Dismiss, Doc. 13.)  The Court addresses that motion by separate order.

4

8), and state law on unjust enrichment does not vary significantly (id. at 8-13). To the extent the Court will have to review the underground facilities statutes of the various states, plaintiffs believe the review would not be difficult because the Court's analysis on claims processing charges will echo its analysis from Hinson I (id. at 13-16), the analysis of loss of use charges is limited to the nine states in the BellSouth subclass (id. at 16-17), and marker ball charges are clearly outside the bounds of recoverable costs under any state's laws (id. at 17). Finally, plaintiffs argue that the Court should wait to see what the facts reveal regarding whether the classes may qualify for certification under Rule 23(b)(2). (Id. at 18.)

In reply, defendants argue that striking the multistate class allegations is appropriate because discovery will not alleviate the need to conduct a state-by-state review of the applicable law. (Doc. 38 at 1-2.) According to defendants, this is true whether Missouri law applies as plaintiffs claim (id. at 9-10), or whether the law of the home state of each facilities damager applies as defendants claim (id. at 3-9).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) permits a court, acting on its own or upon motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike under Rule 12(f) must be made either before responding to the pleading or within twenty-one days of being served with the pleading if no response to the pleading is allowed. Fed. R. Civ. P. 12(f)(2). "'[M]otions under Rule 12(f) are viewed with disfavor and are infrequently granted.'" Harvey v. Lake Buena Vista Resort, LLC, 568 F. Supp. 2d 1354, 1359

5

(M.D. Fla. 2008) (quoting 5A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1380 (2d ed. 1990)). "In evaluating a motion to strike, the court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings." Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 683 (M.D. Fla. 2002) (quotations omitted).

"Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification." MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co., 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010); see Fed. R. Civ. P. 23(c)(1) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."); Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1279 (11th Cir. 2009) (stressing that class certification be addressed as early as possible). Federal Rule of Civil Procedure 23(d)(1)(D) permits a court to enter an order requiring that class allegations be eliminated from the pleadings and the action proceed without them. "'Dismissal at the pleading stage, however, is an *extreme remedy* appropriate only where a defendant demonstrates *from the face of the complaint that it will be impossible to certify* the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove.'" Lawson v. Life of the South Ins. Co., 286 F.R.D. 689, 695 (M.D. Ga. 2012) (quoting Oginski v. Paragon Props. of Costa Rica, LLC, Nos. 10-21720-CIV, 11-60647-CIV, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011) and Romano v. Motorola, Inc., No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007)).

## III. ANALYSIS

Defendants' primary contention here is that variations in state law on unjust enrichment and on the permissible recovery for damage to underground facilities make certification of the national class and the BellSouth class impossible under Rule 23(b)(3). (Doc. 14 at 1 n.1, 5.) However, the question at this stage of the proceedings is simply whether it is plain enough from plaintiffs' complaint for the Court to conclude that certification of plaintiffs' proposed multistate classes will be impossible under any circumstances.

### A. The Law Applicable to Plaintiffs' Unjust Enrichment Claims

Right out of the gate, the parties disagree about what law applies to plaintiffs' unjust enrichment claims. They agree that the Florida choice-of-law doctrine of lex loci contractus applies to the unjust enrichment claims. (Doc. 29 at 6; Doc. 38 at 3.) But they cannot agree on what the doctrine means or how it applies here. Plaintiffs allege that Missouri law applies as the place where defendants accepted and retained the damagers' payments. (Doc. 29 at 6-7.) Defendants argue that each "quasi-contract" was completed where each damager mailed its payment, so the law of each state where a damager is located applies. (Doc. 38 at 6-7.)

From this basic disagreement, the parties disagree further about whether state law on unjust enrichment truly varies in any material way, including the elements of an unjust enrichment cause of action, the statute of limitation applicable to such a claim, and the availability and application of a "voluntary payment" defense. Each side has provided a survey of its reading of the law of unjust enrichment across the

7

country. (Doc. 14-2; Doc. 14-3; Doc. 29 at Ex. 2.) Defendants argue that their survey suggests significant variation in the law. (Doc. 14 at 12-20.) Plaintiffs admit there are differences, but dispute that any are material, should the Court need to look beyond Missouri law. (Doc. 29 at 8-12.)

Variations in the law applicable to multistate class actions may implicate both predominance and manageability concerns. Klay v. Humana, Inc., 382 F.3d 1241, 1261, 1269 (11th Cir. 2004); see Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1184 (11th Cir. 2010). "'In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." Klay, 382 F.3d at 1254 (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996)). Class certification may be possible, however, if state laws are uniform where it matters or if a few subclasses of states with materially identical legal standards can be created and efficiently managed. Sacred Heart, 601 F.3d at 1183-84; Klay, 382 F.3d at 1262.

The Court has closely reviewed the parties' submissions. (Doc. 14-2; Doc. 14-3; Doc. 29 at 27-37.) Without deciding which side has the better of any of their disagreements, the Court concludes that it is premature at this stage to strike the multistate class allegations on the basis of potential differences in the law of unjust enrichment because it is not yet clear which differences may be material. The Court cannot yet predict whether the identified differences in state laws on, for instance, the level of fault required to prove a claim for unjust enrichment, the voluntary payment affirmative defense, or the statutes of limitations will present an insurmountable

obstacle to certifying a multistate class or subclasses. Thus, the Court declines to strike plaintiffs' multistate class allegations on the basis of differences in the state laws of unjust enrichment.

## B.   The Recovery Allowed for Damage to Underground Facilities

The parties agree that, regardless of which state's (or states') law of unjust enrichment may apply, the Court would have to interpret and apply the laws of every state implicated in the national class and the BellSouth subclass to determine if defendants were entitled to recover the charges challenged here. (Doc. 14 at 8; Doc. 29 at 13.)  Defendants describe this task as impossible (Doc. 14 at 9), while plaintiffs suggest that the Court can largely extrapolate its analysis from Hinson I to the larger multistate classes (Doc. 29 at 14-16).

The Court has also closely reviewed the parties' surveys of state law on recoverable costs for damage to underground facilities. (Doc. 14-1; Doc. 29 at 38-56.) Though law on this topic does indeed differ among the states, the Court is again unable to say at this point whether these differences will be material. Depending on how discovery develops, material differences among the state statutes may fall away or at least become more manageable.[8]  The Court therefore declines to strike plaintiffs' multistate class allegations on this basis either.

---

[8] Plaintiffs indicate that they may drop certain states from their proposed national class and the BellSouth subclass upon closer review of the law. (Doc. 29 at 15, 17 (suggesting plaintiffs may drop Hawaii, Louisiana, Maine, and certain BellSouth states).)  After discovery, plaintiffs may choose to make other changes to the proposed class. Again, the Court does not know what the evidence will show or whether the class or subclasses plaintiffs finally propose will be capable of certification.

9

### C.     Rule 23(b)(2)

Finally, for the same reasons, the Court will not strike plaintiffs' class allegations on the grounds that they may not support certification under Rule 23(b)(2). Further, only after discovery indicated that injunctive relief would be unnecessary did the Court in <u>Hinson I</u> find that the requirements of Rule 23(b)(2) had not been met. 275 F.R.D. at 648 n.8.   The Court cannot yet reach the same conclusion here.

The parties should engage in class discovery, and the Court will decide whether to certify a class (or subclasses) on a more fully developed record. Thus, with no prejudgment as to the Court's ultimate conclusion on class certification, it is hereby **ORDERED** that Defendants' Motion to Strike Multistate Class Allegations (Doc. 14) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 20th day of March, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

bjb.
Copies:

Counsel of record

10